**H & M CAKE BOX, INC., Plaintiff-Appellant,**

**v.**

**BAKERY AND CONFECTIONERY WORKERS INTERNATIONAL UNION OF AMERICA, LOCAL NO. 45, Defendant-Appellee.**

No. 71–1322.

United States Court of Appeals, First Circuit.

Heard Jan. 3, 1972.

Decided Jan. 28, 1972.

Frederick T. Golder, Boston, Mass., for appellant.

Warren H. Pyle, Boston, Mass., with whom Angoff, Goldman, Manning & Pyle, Boston, Mass., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE, Circuit Judge, and WYZANSKI, Senior District Judge.*

McENTEE, Circuit Judge.

This is an appeal from the granting of summary judgment against the company, appellant herein, in an action brought by it under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1970). The company alleged that the appellee union had breached its collective bargaining agreement by calling a strike on June 25, 1969.

The facts most favorable to the company indicate that on or about June 25, 1969, a dispute arose during a telephone conversation between the company's treasurer, Martin Myerow, and the union business agent, George Newman, over the union's right to substitute one worker for another at the company's bakery. The business agent is alleged to have threatened a strike if the company did not accede to his demands. The argument continued when Newman appeared personally at the company's plant later the same day and ordered several employees to leave their jobs immediately. Myerow suggested arbitration, to which Newman is alleged to have replied, "Arbitrate [profanity], I'll fix you good." Union employees did not appear for the night shift and thereafter the union was on strike.

* Sitting by designation.

As a result of this strike it was necessary for the officers of the company to work sixteen hours per day, seven days a week, to retain their business. The company's bargaining agent[1] arranged for an arbitration proceeding to be held on June 30. The company, however, refused to participate because the union was on strike and because the officers of the company were too busy to leave the bakery. On July 11 an attorney for the company wrote to the union stating, "that as of May 29, 1969 the H & M Cake Box, Inc. . . . was no longer a union shop. If any money is owed to the union up until that time, please advise us of the amount and where it should be paid." The company appears to have been in arrears in its payments to the union's health and welfare fund.[2]

In granting summary judgment for the union the district court ruled that: (1) the company's refusal to arbitrate prevents it from complaining about the strike; (2) the letter by the company's attorney acted as a repudiation of the contract; and (3) the contract requires arbitration of violations of the no-strike clause.

Addressing ourselves initially to the district court's third point, we find that the contract does not necessarily require arbitration of breaches of the no-strike agreement. *Compare* Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), *with* Drake Bakeries, Inc. v. Local 50, American Bakery Workers, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962). Article XIV of the contract states:

1. The company is a member of the Greater Boston Hebrew Master Bakers Association, Inc., which serves as the bargaining agent for its members.

2. The "Jobbers Holiday Fund, the Bakers Union Local #45 of Boston & Subscribing Employers' Health & Welfare Trust Fund, and the Bakers' Union Local #45 of Boston & Subscribing Employers' Pension Trust Fund" are referred to herein as the health and welfare fund.

3. Payments were due fifteen days after billing, but it appears that strict compli-

## "ARBITRATION—GRIEVANCES

"It is hereby agreed that there shall be no strikes unless for those reasons as may be expressed herein or lockout during the term of this agreement, since it provides for the amicable settlement by arbitration of grievances and disputes arising under it."

Very possibly, unlike the contract in *Drake Bakeries,* here the no-strike agreement is the *quid pro quo* for the arbitration clause. Thus an unauthorized strike relieves the company of its obligation to arbitrate. Even if the no-strike agreement were not the *quid pro quo* of the duty to arbitrate, there remains the factual issue of the effect of Newman's actions on June 25. His refusal to arbitrate, coupled with his simultaneous strike call, may have constituted an independent union repudiation of the arbitration agreement, thus relieving the company from any further obligation under that clause of the contract.

Whether the letter of July 11 constituted a breach or repudiation of the contract as of May 29 is also a disputed material issue of fact which should be resolved at trial. The union contends that it did not breach either the arbitration clause or the no-strike clause because this letter relieved it of the duty to refrain from striking. The contract provides that the union may strike if the company refuses or fails to make payments to the health and welfare fund.[3] While this letter may affect the company's ultimate ability to recover in this action, it cannot, however, by bene-

ance was not required by the union, and the present record is silent as to whether the company had in fact been billed. The affidavit of George Newman states that no payment had been made for the period beginning with the week ending June 13. Assuming a billing at the end of that week, the company could not be deemed to have been in violation of the contract until June 28, three days after the strike. The only indication we have of anything resembling a bill is a letter from the union to the company dated July 7, 1969.

fit of hindsight, provide justification for the union action on June 25.

In view of the above, it is evident that there were material issues of fact which the district court improperly resolved on the motion for summary judgment. Rule 56 Fed.R.Civ.P.; United States v. Diebold, 369 U.S. 654, 82 S.Ct. 993, 8 L. Ed.2d 176 (1962). The court's function here was not to determine the facts but rather to determine whether a genuine issue of material fact existed.

Reversed and remanded for proceedings not inconsistent with this opinion.