ATTORNEY GENERAL & another[1] vs. ROBERT W. BAILEY[2]
& another.[3]

Suffolk. February 3, 1982. — June 2, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Practice, Civil,* Summary judgment. *Education. Constitutional Law,* Freedom of religion, Freedom of association, Privacy, Search and seizure. *Words,* "School," "Supervisory Officer."

Statement of principles of law determining the appropriateness of summary judgment. [370-371]

The supervisory officers of a private school conducted under religious auspices, which had not been approved pursuant to G. L. c. 76, § 1, as satisfying the compulsory attendance law, were required by G. L. c. 72, § 2, to report the name, age, and residence of each child in attendance to the superintendent of schools of the town where the child resides. [372-374]

The information reporting requirements of G. L. c. 72, § 2, did not unconstitutionally burden the First Amendment rights of supervisory officers of a private school conducted under religious auspices, the children attending the school, or the parents of these children, to the free exercise of their religion, in view of the State's need for the required information in order to assure the education of all its children. [374-377]

General Laws c. 72, § 2, by requiring the supervisory officers of a non-approved private school, conducted under religious auspices, to report to municipal officers certain information concerning each child attending the school, neither inhibited religion nor fostered an excessive governmental entanglement with religion within the prohibition of the establishment clause of the First Amendment to the United States Constitution. [377-379]

---

[1] Commissioner of Education.

[2] Pastor of the Grace Bible Church in his capacity as a supervisory officer of the Grace Bible Church Christian School.

[3] Steven M. Willett, associate pastor of the Grace Bible Church, in his capacity as a supervisory officer of the Grace Bible Church Christian School.

General Laws c. 72, § 2, by requiring disclosure to municipal school officials of the names, ages, and residences of children attending a nonapproved private school conducted under religious auspices, which could lead to prosecution of the children's parents under the compulsory attendance law, did not impermissibly burden the Federal constitutional right of the supervisory officers of the school, the children, or their parents to freedom of association, in view of the State's compelling interest in the education of its children. [379-381]

General Laws c. 72, § 2, by requiring disclosure of the names, ages, and residences of children attending a nonapproved private school conducted under religious auspices, did not infringe upon the rights of the children, their parents, or the supervisory officers of the school, under the Fourth Amendment to the United States Constitution, to be free from unreasonable governmental intrusion and surveillance. [383-384]

CIVIL ACTION commenced in the Superior Court Department on December 10, 1980.

The case was heard by *Paquet, J.*, on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Charles E. Craze,* of Ohio (*John C. Sandelli* with him) for the defendants.

*Maria I. Lopez,* Assistant Attorney General, for the plaintiffs.

ABRAMS, J. We granted the plaintiffs' application for direct appellate review to resolve two narrow questions: whether G. L. c. 72, § 2, requires nonapproved private schools, run under religious auspices, to report the names, ages, and residences of the children in attendance; and, if so, whether this requirement violates the right to religious freedom, freedom of association, and privacy, guaranteed by the First and Fourth Amendments to the United States Constitution.[4] We hold that the reporting requirement of G. L.

---

[4] This case does not raise the issue of the constitutionality of standards for approving private schools, curriculum requirements, or the qualifications of private school teachers. We do not consider these issues, and we intimate no view on them.

The defendants do not argue that our State Constitution provides greater protection than the United States Constitution. Thus, we do not consider any issues of State constitutional law.

c. 72, § 2, applies to all private schools, approved and non-
approved, religious and secular. In addition, the applica-
tion of this requirement to schools run by religious organiza-
tions is constitutional.

We summarize the facts. Since September, 1980, the
Grace Bible Church has operated the Grace Bible Church
Christian School in Dracut, to provide a Christian educa-
tion for students in grades one through six. Reverend
Robert W. Bailey is the pastor of the church. Reverend
Steven M. Willett is the associate pastor of the church and
administrator of the school. They are also the officers,
directors, and incorporators of the church.

On October 7, 1980, the school committee of Dracut re-
quested the names and addresses of all the Dracut resident
children who attend the Grace Bible Church Christian
School. In a letter, dated October 16, 1980, the defendants'
attorney notified the school committee that the Grace Bible
Church Christian School would be unable to comply with
their request. The office of the Attorney General, by letter
dated November 13, 1980, asked Reverend Bailey to comply
with the school committee's request. On November 18,
1980, the defendants' attorney replied that since the Grace
Bible Church Christian School is a church school, it is not
subject to the reporting provisions of G. L. c. 72, § 2. In
addition, the defendants' attorney argued that 603 Code
Mass. Regs. §§ 19.01-19.05 (1979) violated the privacy of
United States citizens and the sanctity of the church.[5]

After receiving this reply, the Attorney General and the
Commissioner of Education brought this action in the
Superior Court to obtain compliance with the private school
reporting provisions of G. L. c. 72, § 2. They sought a
declaration that Reverend Bailey and Reverend Willett, as
supervisory officers of the Grace Bible Church Christian

---

[5] Under 603 Code Mass. Regs. §§ 19.01-19.05 (1979), school committees
are required to collect, maintain, and transmit to the Department of
Education information pertaining to each person in the Commonwealth
between the ages of three and twenty-one years.

School, are required to report to the superintendent of schools of the town the name, age, and residence of every child who attends that school. Before trial, the plaintiffs moved for summary judgment, claiming that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. After a hearing at which the Reverends Bailey and Willett submitted affidavits in opposition to the plaintiffs' motion, the judge ruled that there were no genuine issues of material fact. Consequently, the judge granted the plaintiffs' motion for summary judgment, declared that "the Commonwealth's interest [in compulsory education] is of sufficient magnitude to override whatever constitutional interest the defendants may have in refusing to disclose the information requested," and ordered the defendants to comply with G. L. c. 72, § 2. The defendants appealed. We affirm.

1. *Summary Judgment.*

Rule 56 (c) of the Massachusetts Rules of Civil Procedure, 365 Mass. 824 (1974), provides that a judge shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In considering a motion for summary judgment, the court does not "pass upon the credibility of witnesses or the weight of the evidence [or] make [its] own decision of facts." *Hub Assocs.* v. *Goode*, 357 Mass. 449, 451 (1970), quoting *Gordon* v. *American Tankers Corp.*, 286 Mass. 349, 353 (1934). A court should not grant a party's motion for summary judgment "merely because the facts he offers appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial." *Hayden* v. *First Nat'l Bank*, 595 F.2d 994, 997 (5th Cir. 1979), quoting 10 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2725, at 514 (1973). Instead, the court should only "determine whether a genuine issue of material fact exist[s]." *H & M Cake Box, Inc.* v. *Bakery &*

*Confectionery Workers, Int'l Union, Local 45,* 454 F.2d 716, 719 (1st Cir. 1972).

When the court considers the materials accompanying a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion." *Hub Assocs.* v. *Goode,* 357 Mass. 449, 451 (1970), quoting *United States* v. *Diebold, Inc.,* 369 U.S. 654, 655 (1962). "Also, all doubt as to the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment." *Gross* v. *Southern Ry.,* 414 F.2d 292, 297 (5th Cir. 1969). "[T]he moving party must affirmatively show that there is no real issue of fact." *Hub Assocs.* v. *Goode, supra.* Indeed, "[a] party moving for summary judgment assumes the burden of affirmatively demonstrating that there is no genuine issue of fact on every relevant issue raised by the pleadings. This is so even though . . . he would have no burden if the case were to go to trial." *Mack* v. *Cape Elizabeth School Bd.,* 553 F.2d 720, 722 (1st Cir. 1977). See *Felix* v. *Young,* 536 F.2d 1126, 1134-1135 (6th Cir. 1976).

Relying on these principles, the defendants claim that the judge erred in granting the plaintiffs' motion for summary judgment because there are genuine issues of material fact. We do not agree.

2. *Statutory Arguments as to the Applicability of G. L. c. 72, § 2, to Grace Bible Church Christian School.*

a. *Grace Bible Church Christian School is a school subject to the reporting requirement of G. L. c. 72, § 2.* The defendants claim that their affidavits, denying that the Grace Bible Church Christian School is a "school," raise genuine issues of material fact which cannot be decided on a motion for summary judgment. On this record, we think that the issue whether the Grace Bible Church Christian School is a "school" within the meaning of G. L. c. 72, § 2, is a question of law, and thus is a proper subject for a motion for summary judgment.

General Laws c. 72, § 2, as amended by St. 1966, c. 14, § 62, requires "[t]he school committee of each town [to] ascertain the number of pupils . . . whose parents or guardians are residents of the town and who are enrolled for full-time attendance, in kindergarten and grades up to and including grade twelve, in public and vocational schools and classes in the commonwealth and nonpublic schools anywhere." To enable school committees to carry out this duty, G. L. c. 72, § 2, mandates that "[t]he supervisory officers of all private schools shall, within thirty days after the enrollment or registration of any child of compulsory school age, report his name, age and residence to the superintendent of schools of the town where the child resides . . . ."

Grace Bible Church Christian School provides full-time instruction in reading, writing, spelling, history, mathematics, science, geography, language, poetry, art, physical education, phonics, and the Bible, to children in grades one through six. The stated educational goals of the school include teaching children "[t]o develop creative skills for communication, and mathematical skills; [t]o develop critical thinking and intellectual integrity; and [t]o train latent abilities, intellectual or physical." "In its ordinary meaning, the word 'school' denotes a place for systematic instruction in any branch or branches of knowledge. . . . '[I]t means a place where systematic instruction in any or all of the useful branches of learning is given by methods common to schools and institutions of learning.'" *Chicopee* v. *Jakubowski*, 348 Mass. 230, 232 (1964), quoting *Kesselring* v. *Bonnycastle Club, Inc.*, 299 Ky. 585, 589 (1929). Thus, we believe that the Grace Bible Church Christian School is a "school" within the meaning of G. L. c. 72, § 2.[6]

---

[6] General Laws c. 72, § 2, distinguishes between public schools and nonpublic or private schools. The public schools include all schools from those lower than grammar schools to those commonly known as high schools established and maintained as part of the system of popular education. *Jenkins* v. *Andover*, 103 Mass. 94, 97-98 (1869). See *Commonwealth* v. *Connecticut Valley St. Ry.*, 196 Mass. 309, 311-312 (1907). Private schools are schools of the same type which are supported and

Our conclusion is consistent with the purpose of G. L. c. 72, § 2. General Laws c. 72, § 2, was intended to facilitate the enforcement of the compulsory attendance law. G. L. c. 76, § 1. Under G. L. c. 76, § 1, school committees approve those private schools which a child may attend to satisfy the compulsory attendance law.[7] A child may satisfy the compulsory attendance law by attending a school run under religious auspices. To determine which children are complying with the compulsory attendance law, the school committee must identify all children attending private schools, both secular and religious. We believe that the Legislature intended the reporting requirement of G. L. c. 72, § 2, to apply to all private schools, including those run by religious organizations. Thus, the Grace Bible Church Christian School is not immunized from the reporting requirement of G. L. c. 72, § 2, because it is run under the supervision of the board of elders of the Grace Bible Church.

In addition, we believe that G. L. c. 72, § 2, applies to all private schools whether or not they have been approved. To ascertain which children are in compliance with G. L. c. 76, § 1, the school committee must know the names of all children who are attending private schools, approved and nonapproved. Although the Grace Bible Church Christian School has not been approved, see G. L. c. 76, § 1, it is subject to the reporting requirement of G. L. c. 72, § 2.

b. *The defendants are persons required to report.* Under G. L. c. 72, § 2, it is the "supervisory officers" of the school

maintained by individuals. *Id.* at 313. *Jenkins* v. *Andover, supra.* It is undisputed that the Grace Bible Church Christian School is operated under the supervision of the board of elders of the Grace Bible Church, and not the town of Dracut, and is therefore a private school, subject to the reporting requirement of G. L. c. 72, § 2.

[7] In pertinent part, G. L. c. 76, § 1, as amended through St. 1972, c. 766, § 12, provides that "school committees shall approve a private school when satisfied that the instruction . . . required by law equals in thoroughness and efficiency, and in the progress made therein, that in the public schools . . . but shall not withhold such approval on account of religious training."

who have the duty to report the name, age, and residence of every child of compulsory school age in attendance. The role of a supervisory officer is "to oversee, to have oversight of, to superintend the execution of or performance of (a thing), or the movements or work of (a person); to inspect with authority; to inspect and direct the work of others." *Fluet* v. *McCabe*, 299 Mass. 173, 179 (1938). See Webster's New Int'l Dictionary 2533 (2d ed. 1959). Reverend Willett is the administrator of the school. As an "administrator," he "direct[s] or superintend[s] the execution, application or conduct of" the school. See Webster's New Int'l Dictionary 34 (2d ed. 1959). Thus, we believe that there are no genuine issues of material fact concerning Reverend Willett's position as a "supervisory officer" within the meaning of G. L. c. 72, § 2.

In addition, Reverend Bailey is an incorporator, director, officer, and pastor of the church. In his affidavit, Reverend Bailey stated that the school was part of the church. Since Reverend Bailey is a leader of the church, we see no genuine issues of material fact concerning his status as a "supervisory officer" within the meaning of G. L. c. 72, § 2.

3. *Constitutional Issues.*

The defendants claim that the judge erred in granting the plaintiffs' motion for summary judgment because there are genuine issues of material fact relating to the constitutionality of G. L. c. 72, § 2, as applied under the First and Fourth Amendments to the United States Constitution. We conclude that there are no genuine issues of material fact on this constitutional question. The only issues are issues of law. Thus, the judge properly decided these issues on a motion for summary judgment. See *Consolidated Cigar Corp.* v. *Department of Pub. Health,* 372 Mass. 844, 845-846 (1977).

a. *Free exercise.* The defendants claim that G. L. c. 72, § 2, requires the release of information pertaining to the school, a ministry of the church. The defendants assert that to require the disclosure of church information necessarily

violates the free exercise clause of the First Amendment to the United States Constitution.

The free exercise clause embraces two separate concepts, "freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society. The freedom to act must have appropriate definition to preserve the enforcement of that protection." *Cantwell* v. *Connecticut,* 310 U.S. 296, 303-304 (1940). See *Braunfeld* v. *Brown,* 366 U.S. 599, 603 (1961); *Reynolds* v. *United States,* 98 U.S. 145, 164 (1878). The application of G. L. c. 72, § 2, to the Grace Bible Church Christian School does not affect the right of the defendants, the children enrolled in the school, or their parents to maintain their beliefs. General Laws c. 72, § 2, therefore, is a law that regulates conduct.

To determine whether a law that regulates conduct violates the free exercise clause, a court must apply a three-pronged test. A court must determine (1) whether the activity interfered with by the State is motivated by and rooted in a legitimate and sincerely held religious belief; (2) whether the parties' free exercise of religion has been burdened and the extent of the impact on their religious practices; and (3) whether the State has a compelling interest in the regulation which justifies that burden. See *Wisconsin* v. *Yoder,* 406 U.S. 205, 215-229 (1972); *Sherbert* v. *Verner,* 374 U.S. 398, 406-409 (1963); *Thomas* v. *Review Bd. of the Ind. Employment Security Div.,* 450 U.S. 707, 718-719 (1981). *State* v. *Shaver,* 294 N.W.2d 883, 888-889 (N.D. 1980). See also Comment, Regulation of Fundamentalist Christian Schools: Free Exercise of Religion v. The State's Interest in Quality Education, 67 Ky. L.J. 415, 418-419 (1978-1979); Marcus, The Forum of Conscience: Applying Standards Under the Free Exercise Clause, 1973 Duke L.J. 1217, 1242; Note, Public Regulation of Private Religious Schools, 37 Ohio St. L.J. 899, 902 (1976). A court must make this inquiry even if the activity is sponsored by a religious organization. "The Free Exercise Clause is no

talisman, however, which automatically protects religious organizations from governmental regulation. The religious character of an organization does not provide a shield from regulation which in no way affects religious beliefs or acts." *In re Rabbinical Seminary Netzach Israel Ramailis,* 450 F. Supp. 1078, 1081 (E.D.N.Y. 1978).

In this case, the judge was first required to determine whether the operation of the Grace Bible Church Christian School is motivated by a sincerely held religious belief. This threshold question is a question of fact. *State* v. *Whisner,* 47 Ohio St. 2d 181, 199 (1976). The plaintiffs concede that the operation of the Grace Bible Church Christian School is motivated by sincerely held beliefs. Thus, the judge went on to determine whether the statute unduly burdens the parties' right to the free exercise of their religion, and whether the State has a compelling interest which justifies burdening religious practice. These are issues of law. *Roloff Evangelistic Enterprises* v. *State,* 556 S.W.2d 856, 858 (Tex. Civ. App. 1977).

We believe that the application of G. L. c. 72, § 2, to the Grace Bible Church Christian School has only an incidental burden on the defendants' right to practice their religion.[8] See *United States* v. *Holmes,* 614 F.2d 985, 989 (5th Cir. 1980). Cf. *Hearde* v. *Commissioner,* 421 F.2d 846 (9th Cir. 1970). See generally *Johnson* v. *Robison,* 415 U.S. 361, 383-386 (1974). The defendants and parents are free to teach the doctrines of their religion to the children who attend the Grace Bible Church Christian School; the children are free to learn those doctrines.[9] The defendants need only

---

[8] In this case, we examine only the impact of the reporting requirement of G. L. c. 72, § 2 on the right to the free exercise of religion. Parents who send their children to nonapproved private schools run by religious organizations may be prosecuted under the compulsory attendance law. See G. L. c. 76, § 2. The constitutionality of the compulsory attendance law in those circumstances is not before us, and we intimate no view on that issue.

[9] At the hearing on the plaintiffs' motion for summary judgment, the defendants claimed that G. L. c. 72, § 2, has a chilling effect on the exer-

disclose the names, ages, and residences of the children so that the State may determine whether all children are in compliance with the compulsory attendance law.

Balanced against this burden is the State's traditional interest in the education of all its children. "The founders of the colony appreciated the importance and necessity of providing for universal education at a very early period." *Jenkins* v. *Andover*, 103 Mass. 94, 96-97 (1869). Our compulsory attendance law, G. L. c. 76, § 1, demonstrates our continued belief in the importance of education to our democratic society. "It is required in the performance of our most basic public responsibilities, even service in the armed forces. It is the very foundation of good citizenship. . . . In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education." *Brown* v. *Board of Educ.*, 347 U.S. 483, 493 (1954). Because of the importance of education in our society, we believe that the State's need for the required information outweighs the incidental burden on the right of the defendants, parents, and children to practice their religion.

b. *Establishment clause.* The defendants do not dispute that the reporting requirement of G. L. c. 72, § 2, applies to all private schools, both secular and religious. Thus, the defendants do not claim that the purpose of G. L. c. 72, § 2, is to inhibit the operation of schools run under religious auspices. Instead, the defendants argue that, as applied to the Grace Bible Church Christian School, G. L. c. 72, § 2, violates the establishment clause of the First Amendment because it inhibits religion and fosters an excessive govern-

---

cise of their religion. The defendants asserted that once the school disclosed the children's names, the State would institute truancy prosecutions. See G. L. c. 76, § 2. Fearing prosecution, parents might be deterred from sending their children to the Grace Bible Church Christian School. We believe that this claim is best understood as arising under the right of freedom of association as guaranteed by the First Amendment. Cf. *In re Rabbinical Seminary Netzach Israel Ramailis*, 450 F. Supp. 1078, 1082 (E.D.N.Y. 1978). See 379-381, *infra*.

ment entanglement with religion. See *Surinach* v. *Pesquera de Busquets*, 604 F.2d 73 (1st Cir. 1979).[10]

To determine whether the statute violates the establishment clause, the judge was required to apply the test set out by the United States Supreme Court in *Lemon* v. *Kurtzman*, 403 U.S. 602, 612 (1971). "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, *Board of Educ.* v. *Allen*, 392 U.S. 236, 243 (1968); finally, the statute must not foster 'an excessive government entanglement with religion.'" *Lemon* v. *Kurtzman, supra* at 612-613, quoting *Walz* v. *Tax Comm'n of the City of N.Y.*, 397 U.S. 664, 668 (1970). See *Larson* v. *Valente*, 456 U.S. 226, 240-243 (1982). The application of G. L. c. 72, § 2, to the Grace Bible Church Christian School has only an incidental effect on the right of the defendants, children, and parents to practice their religion. See 376, *supra.* We, therefore, do not view the primary effect of G. L. c. 72, § 2, as inhibiting religion.

Moreover, as applied to the Grace Bible Church Christian School, G. L. c. 72, § 2, does not foster an excessive government entanglement with religion. "Where unconsti-

---

[10] In *Surinach* v. *Pesquera de Busquets*, 604 F.2d 73 (1st Cir. 1979), the court held unconstitutional the Puerto Rico Department of Consumer Affairs' investigation of the costs of operating private schools. The court concluded that the power of the secretary of the Department of Consumer Affairs "to 'regulate, fix, control, freeze and review . . . the schools' prices is 'a continuing [involvement] calling for official and continuing surveillance leading to an impermissible degree of entanglement.' *Walz* v. *Tax Commission*, 397 U.S. [664, 675 (1970)]." *Id.* at 78. Subjected to this power, the schools would be confronted with government perusal, public examination, and probably significant government involvement in their fiscal management. Moreover, the court saw no end to the government involvement in private religious schools "[W]ith ceilings in place, the Commonwealth would have the ongoing powers necessary to ensure compliance with its orders and regulations, from compelling the keeping of records and the providing of testimony to the continuing inspection of papers and physical facilities. . . . This governmental program thus has the 'self-perpetuating and self-expanding propensities' which have alerted courts to an increased danger of an unconstitutional degree of entanglement. See *Lemon* v. *Kurtzman* [403 U.S. 602, 624 (1971)]." *Id.*

tutional entanglement has been found, it has been in the government's continuing monitoring or potential for regulating the religious activity under scrutiny." *United States* v. *Freedom Church,* 613 F.2d 316, 320 (1st Cir. 1979).

The application of G. L. c. 72, § 2, to the Grace Bible Church Christian School does not present such a danger. By requiring the supervisory officers to disclose the name, age, and residence of each child attending the school, the State does not seek to regulate or in any way become involved with the religious activities of the school or church. The Commonwealth is merely attempting to determine which children are attending school in compliance with the compulsory attendance law. Cf. *United States* v. *Freedom Church, supra.* We, therefore, conclude that the judge correctly determined as a matter of law that the application of G. L. c. 72, § 2, to the Grace Bible Church Christian School does not violate the establishment clause of the First Amendment.

c. *Freedom of association.* The defendants contend that the disclosure required by G. L. c. 72, § 2, will have a chilling effect on the willingness of parents to send their children to the school.[11] This chilling effect, the defendants assert, is proof that G. L. c. 72, § 2, unconstitutionally burdens the right of the defendants, parents, and children to freedom of association.[12]

To evaluate this claim, the judge first was required to determine whether the statute burdens the defendants', parents', or children's right to freedom of association. See

---

[11] We think that the defendants have standing to raise the free association rights of the parents and children. See *NAACP* v. *Alabama,* 357 U.S. 449, 458-460 (1958).

[12] The "freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *NAACP* v. *Alabama,* 357 U.S. 449, 460 (1958). Freedom of association is a limit on the power of State government. *Shelton* v. *Tucker,* 364 U.S. 479, 490 (1960). See L. Tribe, American Constitutional Law § 11-2, at 569 & n.30 (1978).

*Bates* v. *Little Rock*, 361 U.S. 516, 523 (1960). *NAACP* v. *Alabama*, 357 U.S. 449, 462-463 (1958); *In re Rabbinical Seminary Netzach Israel Ramailis*, 450 F. Supp. 1078, 1082 (E.D.N.Y. 1978). The right to freedom of association includes the right to belong to religious organizations. *NAACP* v. *Alabama, supra* at 460-461. In exercising this freedom, parents have the right to send their children to schools that promote their religious beliefs, and children have the right to attend those schools. Cf. *Runyon* v. *Mc-Crary*, 427 U.S. 160, 176 (1976), citing *Meyer* v. *Nebraska*, 262 U.S. 390 (1923).

"A requirement that adherents of particular religious faiths or political parties wear identifying arm-bands," would violate the right of freedom of association. *American Communications Ass'n* v. *Douds*, 339 U.S. 382, 402 (1950). See *NAACP* v. *Alabama, supra* at 462. The right to freedom of association necessarily encompasses the right to "privacy in one's associations" including religious associations. *Id.* However, compelled disclosure of membership in religious organizations only violates the right of freedom of association if it brings adverse consequences on the members. See *In re Rabbinical Seminary Netzach Israel Ramailis*, 450 F. Supp. 1078, 1083 (E.D.N.Y. 1978); *United States* v. *Freedom Church*, 613 F.2d 316, 320 (1st Cir. 1979). Cf. *Buckley* v. *Valeo*, 424 U.S. 1, 69-70 (1976). Thus, the compelled disclosure of the names, ages, and residences of the children who attend the Grace Bible Church Christian School burdens the right to freedom of association only if it has adverse consequences for the children or parents.

It is undisputed that the required disclosure of the identity of the children attending the school does have adverse consequences. One parent whose son attends the school has been informed that his child is not in compliance with G. L. c. 76, § 1. A parent whose child does not comply with the compulsory attendance law may be fined $20. G. L. c. 76, § 2. For inducing a child to absent himself from school, a parent may be fined $200. G. L. c. 76, § 4. As the State identifies the children attending the Grace

Bible Church Christian School, it is reasonably likely that their parents may be threatened with truancy prosecutions. Thus, application of G. L. c. 72, § 2, to the Grace Bible Church Christian School burdens the free association rights of the parents and children. Since the threat of truancy prosecutions may deter parents from sending their children to the Grace Bible Church Christian School, G. L. c. 72, § 2, also burdens the defendants' right to freedom of association.

But finding this burden did not end the judge's inquiry. "Government may compel even those disclosures which directly burden [the right to freedom of association] in service of 'an interest in obtaining the disclosures . . . which is sufficient to justify the deterrent effect' on [this right]. [*NAACP* v. *Alabama*, 357 U.S. 449, 463 (1958).] The governmental interest must be compelling and there must be some substantial relation between that interest and the information sought." *In re Rabbinical Seminary Netzach Israel Ramailis*, 450 F. Supp. 1078, 1083 (E.D.N.Y. 1978). *Buckley* v. *Valeo, supra* at 64-66. In this case, the judge correctly determined as a matter of law that the State's interest in compulsory education is so compelling and the information sought so relevant that it justifies the burden on the defendants', the parents', and the children's right to freedom of association.

d. *Privacy.* Additionally, the defendants claim that the application of G. L. c. 72, § 2, to the Grace Bible Church Christian School violates the privacy rights of the defendants, the children, and the parents. The right to privacy protects three different interests. One is the interest in avoiding disclosures of personal matters and a second is the interest in independence in making certain kinds of important decisions. *Whalen* v. *Roe*, 429 U.S. 589, 599-600 (1977) (disclosure of the names of persons who purchase dangerous prescription drugs upheld). The third is "the right of the individual to be free in his private affairs from governmental surveillance and intrusion." *Id.* at 599 n.24. Since the defendants have not identified the specific privacy interest

at issue in this case, the judge was required to determine whether G. L. c. 72, § 2, as applied to the Grace Bible Church Christian School, unconstitutionally burdens any of these interests.

First, the judge had to examine whether G. L. c. 72, § 2, unconstitutionally burdens the parents', children's, or defendants' right to make certain independent decisions. These decisions deal with "matters relating to marriage, procreation, contraception, family relationships," *Paul* v. *Davis*, 424 U.S. 693, 713 (1976); see *Whalen* v. *Roe*, 429 U.S. 589, 600 (1977), and include the parents' right to direct the upbringing of their children. See *Runyon* v. *McCrary*, 427 U.S. 160, 178 n.15 (1976).

General Laws c. 72, § 2, does not directly affect the parents' right to send their children to the Grace Bible Church Christian School or to attend the Grace Bible Church. Cf. *Plante* v. *Gonzalez*, 575 F.2d 1119 (5th Cir. 1978), cert. denied, 439 U.S. 1129 (1979). It neither prohibits parents from enrolling their children in the Grace Bible Church Christian School nor interferes with the ability of children to obtain the religious education provided by the school. General Laws c. 72, § 2, merely requires the supervisory officers of the school to report the name, age, and residence of every child who attends that school. It may be that the reporting requirement of G. L. c. 72, § 2, deters a few parents from sending their children to the Grace Bible Church Christian School. However, we think that the judge correctly determined as a matter of law that this indirect effect is outweighed by the State's compelling interest in the compulsory attendance laws. Cf. *Walsh* v. *Louisiana High School Athletic Ass'n*, 616 F.2d 152 (5th Cir. 1980), cert. denied, 449 U.S. 1124 (1981); *Cooper* v. *Oregon School Activities Ass'n.*, 52 Or. App. 425 (1981).[13]

---

[13] The defendants claim that G. L. c. 72, § 2, violates the defendants' and parents' right to direct the education and upbringing of their children. The right to direct the education and upbringing of one's children is part of the privacy right. See *Runyon* v. *McCrary*, 427 U.S. 160 (1976). We have already determined that the judge correctly concluded as a mat-

Next, the judge was required to examine whether the application of G. L. c. 72, § 2, violates the interest of the defendants, the parents, or the children in avoiding disclosures of certain personal matters. This branch of the privacy right is broader than the interest in making certain independent decisions. Matters falling outside the right to make independent decisions may still implicate the interest in nondisclosure or confidentiality. *Fadjo* v. *Coon*, 633 F.2d 1172, 1176 (5th Cir. 1981). However, when the information sought involves the disclosure of organizational membership, a court should determine whether the disclosure violates the members' right to freedom of association. See *Plante* v. *Gonzalez*, 575 F.2d 1119 (5th Cir. 1978). We have already determined that the judge correctly concluded that the disclosure requirement of G. L. c. 72, § 2, does not violate the right of the defendants, parents, or children to freedom of association. See part 3 c, *supra*.

Finally, the judge was required to determine whether the application of G. L. c. 72, § 2, violates the right of the defendants, the parents, or children to be free from government surveillance and intrusion. This right is protected by the Fourth Amendment's prohibition against unreasonable searches and seizures. *Whalen* v. *Roe*, 429 U.S. 589, 599 n.24 (1977). Except for limitations concerning breadth and relevancy, the Fourth Amendment does not ordinarily restrict an administrative requirement of reports. "The protection against unreasonable searches and seizures is satisfied if the inquiry is within the authority of the agency, the demand is not indefinite and the information sought is reasonably relevant to the administrative endeavor." *Colegio Puertorriqueño de Niñas, Liceo Ponceño, Inc.* v. *Pesquera de Busquets*, 464 F. Supp. 761, 766-767 (D.P.R. 1979). See *United States* v. *Morton Salt Co.*, 338 U.S. 632, 651-652 (1950). The disclosure required by G. L. c. 72, § 2, is intended to aid the enforcement of the compulsory attendance law. G. L. c. 76, § 1. The infor-

ter of law that G. L. c. 72, § 2, does not violate this aspect of the privacy right of the parents or the defendants. See 382, *supra*.

mation sought is highly relevant to that purpose. We, therefore, conclude that the judge correctly determined as a matter of law that G. L. c. 72, § 2, does not violate the right of the defendants, children, or parents to be free from unreasonable government intrusion and surveillance.[14]

Thus, we conclude that on the very narrow issue of the constitutionality of the reporting requirement, the judge properly granted the plaintiffs' motion for summary judgment. Nevertheless, we caution that where a party claims interference with religious freedom, a judge should rigorously examine the record to ensure that there are no genuine issues of material fact. A party asserting a violation of his First Amendment right to religious freedom must have a full and fair opportunity to present his claim. Since the only issues were issues of law, the defendants were not denied this opportunity.

*Judgment affirmed.*

---

[14] The defendants also claim that G. L. c. 72, § 2, violates the Fourth Amendment's prohibition against unreasonable searches and seizures. We have already concluded that the judge correctly determined as a matter of law that G. L. c. 72, § 2, does not violate the Fourth Amendment right to be free from unreasonable government surveillance. For the reasons stated above, we conclude that G. L. c. 72, § 2, does not violate the Fourth Amendment rights of the defendants, children, or parents to be free from unreasonable searches and seizures.