O’Toole, J.
The plaintiff, Liquid Metronics, Inc. (“LMI”), arranged through an agent to have the defendant, Air Express International Corporation (“AEI“), deliver certain goods to Venezuela. As things turned out, the goods were not delivered as intended, and as a result LMI did not get paid for them. By this action, LMI seeks to hold AEI responsible for the misdelivery and to recover from AEI the value of the goods.
The case was heard by the trial court on cross motions for summary judgment, each supported by an affidavit. The trial judge allowed LMI’s motion and denied AEI’s motion. AEI duly claimed a report of the case.
Central to the controversy is the interpretation of an “Air Waybill,” pursuant to which the goods were shipped. With respect to it, some facts are not in dispute. There is no dispute that under the applicable Air Cargo Tariff, it is shipper’s responsibility to see that the information in the Air Waybill is correct and that the shipper will be liable for any damage suffered as a result of the “irregularity, incorrectness or incompleteness” of the Air Waybill. The Tariff Rules also provide that delivery of the consigned goods is to be made only to the consignee named on the face of the Air Waybill.
Under the applicable rules, the consignee’s name, address, city and country must appear on the face of the Air Waybill in a box encaptioned “Consignee.” If the shipment is to be directed to a bank or other agent for ultimate delivery to another party, such other party’s name must appear in a box on the Air Waybill encaptioned “Also Notify,” and in another box encaptioned “Handling Instructions.” The delivering carrier is not to deal with the other party but only with the party named in the “Consignee” box.
The Air Waybill in the present case contained the following entry in the “Consignee” box:
Aguas Industriales C.A.
c/o Banco Union, Caracas,
Venezuela.
In the “Also Notify” box was the following:
Aguas Industriales, C.A.
Ave. Humboldt Edif. Romano
Bello Monte, Caracas, Venezuela.
A box labelled “Special Instructions” was blank.
The controversy between the parties arose because there was a divergence between what was apparently intended and what happened. What was intended, at least by LMI, was that the goods were to be delivered in Venezuela to the Banco Union, which would hold them until they had been paid for by the intended ultimate purchaser, Aguas Industriales. Instead, they were delivered directly to Aguas Industriales, without collection by the Bank of the purchase price.
AEI fnaintains that its delivery to Aguas was proper because it was consistent with Aguas’s having been named in the “Consignee” box on the Air Waybill, particularly in light of the tariff provisions placing responsibility for “irregularity, incorrectness or incompleteness” of matters in the Air Waybill on the shipper, LMI. On the other hand, LMI argues that, even though Aguas was the first name in the “Consignee” box, a fair reading of the entire entry made clear that the delivery was to be made “in care off (“c/o”) Banco Union, and not directly to Aguas.
*216 In support of its position, LMI submitted the affidavit of a freight forwarder, who stated that he had experience in forwarding goods to Venezuela and that it was “customary” to complete Air Waybills “c/o a bank.” He further stjated that in his experience, when Air Waybills have been made out for delivery “c/o a bank, including those shipments in which AEI was involved, the goods on the airbill have never been released to the customer without collection through the Bank.” In effect, LMI was averring, by means of the affidavit, that the customary practice in the trade was to deliver goods consigned to a customer “c/o a bank” not to the customer but to the bank. The plain implication for the ultimate issue in the case was that AEI wrongfully delivered the goods to Aguas instead of the Bank.
LMI’s affidavit was contradicted by one submitted by AEI. The affidavit was by a Venezuelan commercial attorney, who stated that in Venezuelan law and customary commercial practice the notation “c/o” has no significance to alter the consignee from the name preceding the notation “c/o” and that it was proper under Venezuelan law and customary practice to deliver the goods directly to Aguas.
The opposing affidavits clearly raise a contested factual issue, namely, what meaning the words contained in the “Consignee” box had in light of the customary practice in the trade. The only real question is whether this issue is material to the determination of the case.[1]
We think it is. A customary interpretation of the words contained in the “Consignee” box would bear directly on whether the words in the Air Waybill are to be given a sensible commercial interpretation in light of the practicalities of international shipment of goods, as LMI seems to claim, or whether they ought to be construed' literally and strictly, notwithstanding any larger considerations of the shipper’s probable intent, as AEI claims.
Summaryjudgment is to be granted only if it is clear that there is no issue as to any material fact. All doubt as to the existence of a contested material issue is to be resolved against the party moving for summary judgment. Attorney General v. Bailey, 386 Mass. 367, 370-71 (1982).
We conclude that both motions ought to have been denied. Accordingly, the judgment denying AEI’s motion is affirmed. The judgment allowing LMI’s motion is reversed. The case is remanded for trial or other proceedings consistent with this opinion.

It is significant that both parties apparently considered the question material since they each took pains to address it in the affidavits submitted.