Connolly, J.

STATEMENT OF THE CASE

This is an action involving eight separate counts arising out of the termination of Daniel Goldstein (“Mr. Goldstein”), an at-will employee, on October 16, 2001, after his employer, PFPC, Inc., discharged him for, inter alia, sending an obscene picture by e-mail in violation of the employer’s Code of Ethics and Electronic Media Policy. The following counts constitute all of the remaining counts, all of which are the subject of the defendants’ Motion for Summary Judgment:
1. Wrongful Termination;
2. Breach of Contract;
3. Defamation;
4. Breach of the Duty of Good Faith and Fair
Dealing;
5. Interference with Advantageous Business Relations;
6. Fraudulent Misrepresentation;
7. Promissory Estoppel; and
8. Quantum Meruit.
This civil action is brought by Daniel Goldstein, a discharged employee of PFPC, Inc., alleging wrongful discharge and other claims. The plaintiff started as a customer service representative in the Shareholder Services Group (“TSSG”) of The Boston Company in 1989. The Boston Company was taken over by American Express. Then, TSSG was taken over by First Data Corporation, and was known as First Data’s Investor Services Group (“ISG”). Then PNC bought ISG and assigned the entity to PFPC, Inc.
Mr. Goldstein started as a customer service representative ofThe Boston Company at $16,000 per year, and was paid approximately $190,000 as Vice President of Client Services and Sales in 2001 prior to his discharge. He was discharged on October 16, 2001. He was at all times an at-will employee. He could have been terminated at any time, with or without just cause by his employer, PFPC, Inc. He was discharged for receiving and/or transmitting materials over the internet that were considered “offensive, harassing, pornographic or otherwise inappropriate material.” Such conduct was in violation of the defendants’ Code of Ethics and Electronic Media Policy.
The plaintiff was discharged with cause. One of the reasons given for his discharge was that he allegedly sent a picture of a partially nude woman over the internet. The Supreme Judicial Court has recognized an exception to the general rule allowing for termination of an at-will employee with or without cause, which states that an employee may not terminate an at-will employee “if the termination violates a clearly established public policy.” King v. Driscoll 418 Mass. 576, 582 (1994); Wright v. Shriner’s Hosp. for Crippled Children, 412 Mass. 469, 472 (1992). The determination of whether a “public policy” is implicated in the discharge of an employee is a question of law for the court. “It is not for the jury to define the public policy. The judge must determine whether, on the evidence, there is a basis for finding that a well-defined, important public policy has been violated.” Mello v. Stop & Shop. Co., 402 Mass. 555, 561, n.7 (1988).
Here, the plaintiff is claiming that PFPC, Inc. had offered Mr. Goldstein, as part of a Stay Bonus Agreement, $30,000 after two years of continued employment with PFPC, Inc. (which was to vest on December 1,2001). This retention bonus was to compensate him for options and other benefits he was going to lose in the takeover, and as an incentive to a “key individual” to stay and help build PFPC, Inc. As part of the Stay Bonus Agreement, these benefits would not vest if Mr. Goldstein was terminated “for cause.” The plaintiff claims that his discharge from employment was primarily PFPC, Inc.’s way to avoid paying him the retention bonus and other benefits due in the future, and that his alleged violation of the company’s e-mail policy was merely a pretext for terminating him “for cause.”[1]

FACTS

The following are the facts on which both parties agree.
1. The plaintiff, Mr. Goldstein, was an at-will employee of PFPC, Inc.
2. In August 1999, the plaintiff entered into a “Stay Bonus Agreement” with PFPC that provided that he would be paid a “Stay Bonus” in the amount of $30,000 if he was terminated without cause prior to, *334 or if he was continuously employed by PFPC, Inc. until, December 1, 2001.
3. The Stay Bonus Agreement specifically stated that the agreement did not change the at-will nature of Mr. Goldstein’s employment with PFPC, Inc.
4. PFPC, Inc. operated under a written Code of Ethics. The plaintiff attended training on PFPC’s policy regarding sexual harassment, and received a copy of PFPC’s Code of Ethics and Electronic Media Policy.
5. The Electronic Media Policy in the Code of Ethics prohibited the sending of “articles, jokes, stories, chain letters or other items of personal interest,” prohibited employees from using PFPC’s e-mail “for any purpose unrelated to an employee’s job duties,” prohibited using e-mail to communicate “offensive, harassing, pornographic or other inappropriate material” and forewarned employees that violations of the Code of Ethics and Electronic Media Policy could result in termination of employment.
6. In August 2001, PFPC, Inc. investigated e-mail usage at the Advanced Output Solutions site where plaintiff worked.
7. PFPC, Inc., in the course of its investigation, determined that the plaintiff sent no less than 18 e-mails on PFPC, Inc.’s e-mail system that violated the Electronic Media Policy. The plaintiff admits to 11 e-mails that he sent.
8. One of the e-mails sent by the plaintiff (and agreed to by the plaintiff) to a prospective client of PFPC, Inc., included the words “prohibited” and included an attached photo of a woman with her breasts exposed.
9. As a result of his violations of the Electronic Media Policy by sending inappropriate e-mails, PFPC, Inc. terminated plaintiffs employment on October 16, 2001.
10. As part of the same investigation, PFPC, Inc. identified 28 to 30 employees in the Advanced Output Solutions department who violated the Electronic Media Policy. Four of these employees were discharged based on the severity of their violations, including the plaintiff and one other employee who sent the same email as the plaintiff.
11. The Stay Bonus Agreement provides that the plaintiff would not be eligible for the Stay Bonus if his employment was terminated prior to December 1, 2001 for cause.
12. For cause was defined in the Stay Bonus Agreement to include violations of PFPC, Inc.’s policies, including the Code of Ethics.
13. The majority of the other employees of PFPC who did not engage in the same conduct as the plaintiff were paid their retention bonuses.
Summary Judgment Standard of Review
The court grants summary judgment where no genuine issue as to any material fact exists and where the summary judgment record entitles the moving party to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983). The moving parly bears the burden of affirmatively demonstrating the absence of a triable issue, and that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Summary judgment is appropriate where the moving party either submits affirmative evidence that negates an essential element of the opposing party’s case or demonstrates that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 715-16 (1991).
The adverse party may not defeat a motion for summary judgment by resting on the allegation of its pleadings, but must affirmatively set forth specific facts with affidavits, deposition transcripts, answers to interrogatories or admissions on file showing a genuine issue of triable fact. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). In setting out facts, the court resolves any conflicts in the summary judgment record and makes all logically permissible inferences in the non-moving parly’s favor. Attorney Gen. v. Bailey, 386 Mass. 367, 371 (1982).
Discussion
Basically, the plaintiff has two arguments on the wrongful termination claim, namely, (1) a breach of the implied covenant of good faith and fair dealing, and/or (2) his termination was in violation of a clearly established public policy. He argues that his termination was motivated by relieving the defendant of their contractual obligation to pay him the $30,000 retention bonus that he was eligible to receive under a written agreement if he was continuously employed by PFPC, Inc. until December 1, 2001, or if he was terminated without cause prior to December 1, 2001. Here there is no evidence that the plaintiff was terminated without good cause, and plaintiff has no reasonable expectation of proving that his employment was terminated without good cause. Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991).
In Fortune v. Nat’l Cash Register Co., 373 Mass. 96, 104-05 (1977), the court held that the covenant of good faith and fair dealing is violated when an employer terminates an at-will employee without good cause and deprives the employee of a clearly identifiable future compensation reflective of the employee’s past services. See also Gram v. Liberty Mutual Ins., 391 Mass. 333, 335 (1984) (“our goal is and has been simply to deny to Liberty any readily definable financial windfall resulting from the denial of Gram of compensation for past services”). Basically, the plaintiff claims that the defendant, by discharging Mr. Goldstein, was attempting to avoid paying him the $30,000 Stay Bonus. Here, there is no reasonable *335 expectation of proving that the plaintiff was terminated without good cause, that he was deprived of a clearly identifiable future compensation resulting from past services, or that the defendant was unjustly enriched as a result. The Stay Bonus was an incentive for certain employees to stay with PFPC, Inc. until December 1, 2001. It was not for a clearly identifiable future compensation reflective of the employee’s past services.[2] It appears to this Court that there is no reasonable expectation of proving that his employment was terminated in violation of the implied covenant of good faith and fair dealing.
On the second theory (i.e., of a violation of a clearly defined public policy), the plaintiff has not pointed to any public policy as the purported reason for his termination. Internal administration and the functioning of an organization cannot form the basis for a public policy exception to at-will employment rule. King v. Driscoll, 418 Mass. 576, 582-83 (1994).
Since the plaintiff has no reasonable expectation of proving either of the above-referenced two exceptions to the general rule in Massachusetts, which does not recognize a generalized claim for wrongful discharge, the defendants are entitled to summary judgment on the wrongful discharge count (Count 1).
After a review of all submissions by the parties on all other seven counts, the Court believes that the defendants’ Memorandum and Reply Brief adequately covers the legal issues sufficiently, and the Court adopts those arguments of the defendants.

ORDER

After hearing and review of all submissions by all parties, the Defendants’ Motion for Summary Judgment is ALLOWED.

It should be kept in mind that Mr. Goldstein was an at-will employee, who could be terminated by PFPC, Inc. without cause at any time. Therefore, the issue comes down to whether, under PFPC, Inc.’s policy, Mr. Goldstein was discharged with or without cause. The benefits under the Stay Bonus Agreement would vest if the discharge was without cause and would not vest if the discharge was for cause.

It should be noted that the non-payment of Mr. Goldstein’s bonus of $30,000 on December 1, 20001 did not result in a windfall for PFPC, Inc. PFPC, Inc. had a net income of $780,000,000 and gross profits of $59,000,000 in 2001. Additionally, PFPC, Inc. had other Stay Bonus obligations to 286 other employees totaling around $ 15,000,000. The plaintiff was paid $190,000 in wages in 2001. To claim that PFPC, Inc. discharged the plaintiff to save $30,000 seems incredible in light of these facts.