Wilson, Paul D., J.
On February 27, 2010 plaintiff Robin Devoe went bowling with her family. Shortly after being assigned a bowling lane, Ms. Devoe, in pursuit of her errant four-year-old, slipped and fell, breaking her ankle. Ms. Devoe has now sued the owner or operator of the bowling establishment, defendant Phillips Old Colony House, Inc. a/k/a Boston Bowl (“Boston Bowl”), for negligence, and her husband, Christopher Thompson, has brought a claim against Boston Bowl for loss of consortium.
Boston Bowl now moves for summary judgment, arguing that plaintiffs cannot establish that Boston Bowl had sufficient actual or constructive notice of the existence of a dangerous condition for it to be held liable. Plaintiffs respond that there is a genuine issue of material fact with regard to the question of notice of a dangerous condition, under either the traditional Massachusetts test set forth in the Restatement (Second) of Torts §343 (1965), and Oliveri v. Massachusetts Bay Transportation Authority, 363 Mass. 165 (1973), or under the alternative “mode of operation" test announced by the Supreme Judicial Court in Sheehan v. Roche Brothers Supermarkets, Inc., 448 Mass. 780 (2007).
I conclude that the “mode of operation” test applies, because of the manner in which Boston Bowl handled the sale and consumption of food on its premises. Under that test, a genuine issue of material fact exists as to whether Boston Bowl took all reasonable precautions necessary to protect its customers from foreseeably dangerous conditions, and as to whether Ms. Devoe’s injury resulted from any foreseeably dangerous conditions. Therefore, after hearing, I DENY Boston Bowl’s Motion for Summary Judgment.
Background
Reviewing the evidence in the light most favorable to the non-moving Plaintiffs, Attorney General v. Bailey, 386 Mass. 376, 371 (1982), the facts material to the summary judgment motion are as follows. Ms. Devoe slipped and fell in the area between the scorer’s table and the foul line, that is, the area from which bowlers launch bowling balls towards the pins. See Devoe Depo. at 23-24. When Mr. Thompson went to his wife to help her stand up after she fell, he “noticed water streaks” in the area in which she had fallen. Thompson Depo. page 11, line 21. He felt the wet surface with his hand. Id. at page 12, lines 8-11. He could not tell if the liquid was water or some “other different liquid.” Id. at page 12, lines 2B3.
Meanwhile, Ms. Devoe’s teenage daughters “went to the restaurant or café ... to order pizza and chicken,” and then “(t]hey brought it back” to the area where the family party was bowling. Devoe Depo. page 18, line 19 to page 19, line 1. They “probably” brought back fruit drinks as well. Id. at page 19, line 3. It is undisputed that Ms. Devoe had already fallen by the time her daughters returned from the café with their food and beverage.
There was no testimony from Ms. Devoe herself, or from her brother who may also have helped her husband pick her up, about any wet substance. It is undisputed that no one in the Devoe family bowling party had informed any employee of Boston Bowl about any liquid on the floor, because no one in the Devoe party had noticed it before the accident. Indeed, Mr. Thompson testified that to his knowledge Boston Bowl was not on notice of any wet condition on the bowling lane, id. at page 11, lines 8-12, and there is no other evidence that Boston Bowl was aware of any liquid on that lane.
Discussion
Summary judgment shall be granted where there are no genuine issues of any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The issue here is whether Ms. Devoe can establish that *268 Boston Bowl caused or had either actual or constructive knowledge of the allegedly hazardous condition which, she says, caused her to slip and fall.
As the Supreme Judicial Court pointed out in Sheehan, 448 Mass. at 782, the “traditional premises liability approach” in Massachusetts follows Restatement §343. Under that test, Massachusetts law “has afforded store owners a reasonable opportunity to discover and correct any hazards before liability attaches,” therefore making a key issue the question of whether “a store owner has actual or constructive notice of the existence of the dangerous condition, sufficient to allow time for the owner to remedy the condition.” Sheehan, 488 Mass. at 784.
Establishing what a premises owner knew and when he knew it, as required by Restatement §343, often proves to be a serious obstacle for plaintiffs. Because I conclude that these plaintiffs are entitled to a trial on the alternative “mode of operation” test, I do not consider whether or not plaintiffs could survive summary judgment under the Restatement §343 test.
In Sheehan, the Supreme Judicial Court adopted an alternative to the Restatement §343 notice requirement, but only for certain cases. Specifically, if “the nature of the defendant’s business . . . gives rise to a substantial risk of injury to customers from slip and fall accidents,” and “the plaintiffs injury was proximately caused by such an accident within the zone of risk,” Sheehan allows a customer to hold a premises owner liable if that customer “proves that the store owner failed to take all reasonable precautions necessary to protect invitees from these foreseeable dangerous conditions.” Sheehan, 488 Mass. at 785-86. The accident in Sheehan happened in the produce department of a supermarket, and the court recognized that the self-service nature of the supermarket permitted other patrons to create hazardous conditions by, in that case for example, dropping a grape on which the plaintiff slipped. In other words, the self-service “mode of operation” made it foreseeable to the grocery store owner that “spillage and breakage” will occur, “requiring store owners to use a degree of care commensurate with the risks involved.” Id. at 784.
Boston Bowl correctly argues that the “mode of operation” test applies only to self-service establishments. Boston Bowl next argues that while food — • including beverages — can be purchased in its establishment, that does not make its establishment self-service, because patrons do not have independent access to food and beverage, but must request them from Boston Bowl employees in the restaurant portion of the premises.
That may be true, but once the patrons have been served their food and beverage, apparently they are free to bring that food and beverage back to the bowling lanes, as Ms. Devoe’s daughters did. The fact that her daughters were able to order food and drink, and to carry it themselves to the general vicinity where the accident occurred, makes the bowling lanes akin to the produce department of a self-service supermarket, in that it is possible that prior occupants of that bowling lane brought drinks to the area, spilled them, and did not clean them up.
Boston Bowl points to two cases in which the Appeals Court and the Superior Court have declined to extend the “mode of operation” approach beyond supermarkets. The Appeals Court case, Pittsley v. Saunstar Land Co., LLC, 2007 WL 2580485 (Mass.App.Ct. 2007) (Rule 1:28 Order), concerned a construction worker who slipped on water at a construction site adjacent to a hotel kitchen, a set of facts which did not involve self-service. Similarly, Frank v. Westwood Associates, Inc., 2008 WL 1799765 (Mass.Super. 2008) [23 Mass. L. Rptr. 637], concerned unescorted visitors to a condominium project model unit, but, again, lacked the self-service element.
In other cases, the Appeals Court and the Superior Court have declined to employ the “mode of operation” test even in supermarkets and other stores, where the risk did not arise because of the self-service nature of the store’s mode of operation. For example, in Tavernese v. Shaw’s Supermarkets, Inc., Mass.App.Ct. No. 07-P-1829 (2008) (Rule 1:28 Order), the Appeals Court held that the “mode of operation" test did not apply to the supermarket where the accident was caused by slush in the vestibule of the store; “customers’ ability to help themselves to goods, rather than being assisted by a store employee, did not factor into the condition at issue here, unlike the situation in Sheehan.” Id. at 2. Superior Court judges have reached similar conclusions, declining to apply the “mode of operation” test where accidents were caused by water near the entrance to a supermarket on a rainy day, Gurvich v. Stop & Shop Companies, 25 Mass. L. Rptr. 597 (2009), and water in the main aisle of a department store on a rainy day, Yeshulas v. Macy’s Retail Holdings, Inc., 30 Mass. L. Rptr. 167 (2012).
In short, if water on the floor is not a reasonably foreseeable result of a store’s self-service mode of operation, then the plaintiffs are thrown back to the traditional Restatement §343 approach to notice. The question here is whether that “mode of operation” approach can be extended from a self-service supermarket to a bowling establishment which is “self-service" in the sense that it allows the customers themselves to bring food purchased at the establishment’s café to the bowling lanes.
Two Superior Court cases suggest that the “mode of operation" test is not limited to supermarkets. In Vincequere v. L.J.B. and Associates, Inc. d/b/a Union Blues, 26 Mass. L. Rptr. 85 (2009), a plaintiff attending a nightclub Mardi Gras celebration slipped on Mardi Gras beads. There was evidence from which the jury could conclude that the defendant club owner had placed such beads on each table as a party favor. Therefore, the Superior Court found an issue of fact *269 as to whether the club owner had “created this type of self-service situation so as to make the mode of operation approach applicable.” Id. at *6.
Perhaps more relevant, because it involved food in a non-supermarket setting, is Shawki v. Massachusetts General Hospital, Suffolk Superior Court Civil Action No. 09-1340-B (March 24, 2011). That case arose from an accident suffered in a hospital cafeteria. The plaintiff in Shawki fell after stepping on a french fiy in an area of the cafeteria where patrons could dispose of their trays and leftover food. Noting that the possible extension of the “mode of operation” theory to a cafeteria was a case of first impression in Massachusetts, the court nonetheless made that extension, finding it to be “warranted and inevitable.” Id. at 3.
The court in Shawki noted that, around the time that the Massachusetts Supreme Judicial Court was adopting the “mode of operation” test, the Connecticut Supreme Court was suggesting that this test should be broadly applied to “modem day supermarkets, self-service [markets], cafeterias, fast-food restaurants and other business premises, [which] should be aware of the potentially hazardous conditions that arise from the way in which they conduct their business.” Id. at 2-3, quoting Kelly v. Stop & Shop, Inc., 281 Conn. 768, 778 (2007). And the courts of some other states have employed the mode of operation doctrine well beyond the supermarket context, and have done so for many years. See, e.g., Wells v. Palm Beach Kennel Club, 160 Fla. 502, 504, 35 So.2d 720, 721 (1948) (“a different rule” from the Restatement §343 notice requirement “applies to a place of amusement like a race track where patrons go by the thousands on invitation of the proprietors, and are permitted to purchase and drink bottled beverages of different kinds . . .”).
Today’s case, like Shawki, may well be a case of first impression in Massachusetts. But the extension of the “mode of operation” test to Boston Bowl, given the facts alleged by these plaintiffs, is consistent with Sheehan.
Plaintiffs base their case on the allegation that Ms. Devoe’s injuiy resulted from the presence of a liquid on the bowling lane, but Boston Bowl may contest this fact. Plaintiffs suggest that it would have been a reasonable precaution for Boston Bowl to send an employee to check for spills at their bowling lane before assigning that lane to Ms. Devoe and her family, but Boston Bowl may well argue that such a measure would be too burdensome to be reasonable. Under the mode of operation test, these questions, among others, are for the juiy.
ORDER
For the foregoing reasons, Defendant Boston Bowl’s Motion for Summary Judgment is DENIED.