**FELLOWSHIP BAPTIST CHURCH; Calvary Baptist Church; David B. Jaspers; M. Wayne Denton; Forrest Walker; George A. Stille, Jr.; Diane Peoples; Bradley A. Stille, a minor child, by way of his parent and guardian ad litem, George A. Stille, Jr.; Rita Marks, a minor child, by way of her parent and guardian ad litem, Vernon Marks; and Janet Robb, a minor child, by way of her parent and guardian ad litem, Keith J. Robb, Appellants,**

v.

**Robert T. BENTON, as Superintendent of the Iowa Department of Public Instruction and as Executive Officer of the Iowa Board of Public Instruction; Susan M. Wilson, Karen K. Goodenow William N. Cropp, Jolly Ann Davidson, Stephen C. Gerard, Dianne L. Paca, Mary E. Robinson, John E. Van Der Linden, Harold R. Yeoman, as Members of the Iowa State Board of Public Instruction; and Keokuk Community School District Board of Education, Appellees.**

**FELLOWSHIP BAPTIST CHURCH; Calvary Baptist Church; David B. Jaspers; M. Wayne Denton; Forrest Walker; George A. Stille, Jr.; Diane Peoples; Bradley A. Stille, a minor child, by way of his parent and guardian ad litem, George A. Stille, Jr.; Rita Marks, a minor child, by way of her parent and guardian ad litem, Vernon Marks; and Janet Robb, a minor child, by way of her parent and guardian ad litem, Keith J. Robb, Appellees,**

v.

**Robert T. BENTON, as Superintendent of the Iowa Department of Public Instruction and as Executive Officer of the Iowa Board of Public Instruction; Susan M. Wilson, Karen K. Goodenow, William N. Cropp, Jolly Ann Davidson, Stephen C. Gerard, Dianne L. Paca, Mary E. Robinson, John E. Van Der Linden, Harold R. Yeoman, as Members of the Iowa State Board of Public Instruction, Appellants,**

and

**Keokuk Community School District Board of Education.**

FELLOWSHIP BAPTIST CHURCH; Calvary Baptist Church; David B. Jaspers; M. Wayne Denton; Forrest Walker; George A. Stille, Jr.; Dianne Peoples; Bradley A. Stille, a minor child, by way of his parent and guardian ad litem, George A. Stille, Jr.; Rita Marks, a minor child, by way of her parent and guardian ad litem, Vernon Marks; and Janet Robb, a minor child, by way of her parent and guardian ad litem, Keith J. Robb, Appellees,

v.

Robert T. BENTON, as Superintendent of the Iowa Department of Public Instruction and as Executive Officer of the Iowa Board of Public Instruction; Susan M. Wilson, Karen K. Goodenow, William N. Cropp, Jolly Ann Davidson, Stephen C. Gerard, Dianne L. Paca, Mary E. Robinson, John E. Van Der Linden, Harold R. Yeoman, as Members of the Iowa State Board of Public Instruction;

and

Keokuk Community School District Board of Education, Appellant.

FELLOWSHIP BAPTIST CHURCH; Calvary Baptist Church; David B. Jaspers; M. Wayne Denton; Forrest Walker; George A. Stille, Jr.; Diane Peoples; Bradley A. Stille, a minor child, by way of his parent and guardian ad litem, George A. Stille, Jr.; Rita Marks, a minor child, by way of her parent and guardian ad litem, Vernon Marks; and Janet Robb, a minor child, by way of her parent and guardian ad litem, Keith J. Robb, Appellees,

v.

Robert T. BENTON, as Superintendent of the Iowa Department of Public Instruction and as Executive Officer of the Iowa Board of Public Instruction; Susan M. Wilson, Karen K. Goodenow, William N. Cropp, Jolly Ann Davidson, Stephen C. Gerard, Dianne L. Paca, Mary E. Robinson, John E. Van Der Linden, Harold R. Yeoman, as Members of the Iowa State Board of Public Instruction;

and

Keokuk Community School District Board of Education, Appellant.

Nos. 85-2288, 85-2370, 85-2371 and 85-2527.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1986.

Decided March 27, 1987.

Rehearing Denied April 27, 1987.

**488**

Daniel Jon Loomis, Cleveland, Ohio, for appellant.

Merle Wilna Fleming, Asst. Atty. Gen., Des Moines, Iowa, for Robert T. Benton and Iowa State Bd. of Public Instruction.

David L. Jenkins, Des Moines, Iowa, for Keokuk School Dist. Bd. of Educ.

Before HEANEY and ROSS, Circuit Judges, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

In this appeal, the Court is presented with a broad-based attack on Iowa's compulsory school laws. Plaintiffs are two fundamentalist Baptist church schools, the churches' pastors and principals, and sever-al of the schools' teachers, parents and students. The creation of plaintiffs' church schools is a relatively recent development dating from the 1970s—a part of the growing trend towards the establishment of such schools throughout the country.[1]

Plaintiffs' suit mirrors several previous actions involving fundamentalist groups, including one before the Iowa Supreme Court, which have generally resulted in decisions upholding the states' regulatory schemes. *See, e.g., Johnson v. Charles City Community Schools Board of Education,* 368 N.W.2d 74 (Iowa), *cert. denied sub nom.,* —— U.S. ——, 106 S.Ct. 594, 88 L.Ed.2d 574 (1985); *Sheridan Road Baptist Church v. Department of Education,* 426 Mich. 462, 396 N.W.2d 373 (1986); *Attorney General v. Bailey,* 386 Mass. 367, 436 N.E.2d 139, *cert. denied,* 459 U.S. 970, 103 S.Ct. 301, 74 L.Ed.2d 282 (1982); *State v. Rivinius,* 328 N.W.2d 220 (N.D.1982), *cert. denied,* 460 U.S. 1070, 103 S.Ct. 1525, 75 L.Ed.2d 948 (1983); *Nebraska ex rel. Douglas v. Faith Baptist Church,* 207 Neb. 802, 301 N.W.2d 571, *appeal dismissed,* 454 U.S. 803, 102 S.Ct. 75, 70 L.Ed.2d 72 (1981); *State v. Shaver,* 294 N.W.2d 883 (N.D.1980). Indeed, many of plaintiffs' witnesses had testified in these other cases, including the *Charles City* case involving Iowa law, in which plaintiffs' counsel also participated.

Although many of the issues are similar to those presented to the *Charles City* Court, we of course have undertaken our own independent review of plaintiffs' challenge to the following specific requirements of Iowa law. First, principals must file annual reports with the local school districts listing their pupils' names, ages and dates of attendance, the texts used, and the names of the teachers. Iowa Code

---

* The Honorable Earl R. Larson, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. Plaintiffs' initial complaint sought relief on behalf of twenty-two "educational ministries" or church schools throughout the State of Iowa whose religious beliefs and positions concerning Iowa's compulsory school laws were alleged to be similar to those presented by the two plaintiff churches herein. Complaint, Civ. No. 81-546C (S.D.Iowa, filed November 9, 1981). *See generally Sheridan Road Baptist Church v. Department of Education,* 426 Mich. 462, 396 N.W.2d 373, 396 n. 33 (1986) (noting growth of fundamentalist church schools); Comment, *Regulation of Fundamentalist Christian Schools: Free Exercise of Religion v. The State's Interest in Quality Education,* 67 Kentucky L.J. 415, 415 (1978–1979).

§ 299.3. Second, parents of children ages 7 to 16 must place their children—until completion of the eighth grade—in either a public school or a school that offers "equivalent instruction by a certified teacher." Iowa Code § 299.1. Finally, the state has determined that parents of children in the plaintiff schools are not entitled to the "Amish exemption" to the above requirements, see Iowa Code § 299.24, and plaintiffs argue this determination is unconstitutional. The district court found the challenged laws and their application to plaintiffs constitutional, except, following the suggestion of the *Charles City* Court, held that the term "equivalent instruction" was unconstitutionally vague "without further definition." 620 F.Supp. 308, 313–20 (S.D. Iowa 1985). The court also denied defendant Keokuk Community School District Board of Education's request for attorney's fees under section 1988. Both plaintiffs and defendants appeal from the district court's rulings.

We have reviewed the record carefully, and find that the evidence presented to the district court supports the court's findings and conclusions regarding the reporting and teacher certification requirements. We also find the evidence supports the district court's holding that the denial to plaintiffs of the "Amish exemption" does not violate the equal protection clause or any other constitutional guarantee. Since the district court's ruling on the term "equivalent instruction," the state has promulgated regulations further defining this term, and we remand this aspect of the case to the district court for further consideration. Finally, we believe an award of attorney's fees to the Keokuk School Board is warranted under the particular circumstances of this case, and we remand this issue to the district court as well for a determination of the proper amount of such an award.

## I. PLAINTIFFS' RELIGIOUS BELIEFS

An understanding of plaintiffs' religious beliefs and practices is essential to the proper evaluation of plaintiffs' claims. The evidence presented by plaintiffs to the district court unquestionably revealed that their religious beliefs stem from the Bible. They view Christ as the Head of their church and all of its ministries, and adhere to the doctrine of separation of church and state. Their schools were created in response to these beliefs. Neither church has a doctrine which requires members to send their children to the church school, however, and parents are not subject to discipline for removing their children from the church schools. Enrollment in the schools is not limited to those who belong to the church, and both schools have enrolled pupils whose parents are not members of the church. Moreover, several members send some of their children to the church school, while others attend the public schools.

Although the churches' tenets of faith are similar, each school has a slightly different approach to teaching. The Central Iowa Christian Academy, associated with the Fellowship Baptist Church, uses the "principle approach." The Calvary Baptist Christian Academy, associated with the Calvary Baptist Church, uses the Accelerated Christian Education, Inc. or ACE program. Each school offers the basic curriculum specified in Iowa statutes with a few minor exceptions, as well as other courses, including a course in computers. Plaintiffs' witnesses admitted that there is nothing in either curriculum which forbids teaching by a certified teacher, and in fact, each school employs a teacher who is certified.

Plaintiffs believe themselves to be "in the world but not of the world," but they do not segregate themselves from modern communities. They live in ordinary residential neighborhoods and they interact with their neighbors and others not of their faith. They believe they are called by God to perform certain occupations in life, but these include ordinary occupations such as nurse, lawyer, engineer and accountant, and there is no evidence that they object to the licensing of these occupations. They own and use radios, televisions, motor vehicles and other modern conveniences and advancements. Their dress and lifestyle, while conservative, is not distinctive.

Plaintiffs do, however, object to certain state regulation of their churches' ministries, including the reporting, teacher certification and "equivalent instruction" requirements of Iowa's compulsory school laws. Neither principal has ever filed an annual report as required by Iowa Code § 299.3, although both stated at trial that they had been aware for several years that the law placed this obligation on them. Officials of Calvary Baptist Christian Academy initially had requested information on becoming an approved school,[2] and had assured the Keokuk School District Superintendent that certified teachers would be employed,[3] but the majority of teachers in both schools currently are not certified. In addition to the reporting and certification requirements, plaintiffs object to the term "equivalent instruction" as unconstitutionally vague and assert that any review of their curriculum by the state would necessarily be "far-reaching" and anti-religious.

With this background, we turn to the specific provisions of Iowa law to which plaintiffs object.

## II. REPORTING REQUIREMENTS

Iowa's reporting requirements are very straightforward. Each year, the principal of any private school in Iowa must, upon request from the secretary of the local school district, furnish the names, ages and number of days of attendance of each pupil in grades one through eight, the texts used, and the names of the teachers during the preceding year. Iowa Code § 299.3. The district court found the reporting requirements did not impinge on plaintiffs' constitutional rights, and we agree.

Administrators from other private schools confirmed that the intrusion by the state under section 299.3 is extremely limited. Once each year, the local school district sends each principal a form, which can be completed by a secretary under the principal's supervision in less than one day. The forms require nothing more of plaintiffs than that they provide the minimal information requested, and plaintiff principals admitted that the information was readily available to them. Clearly, section 299.3 does not in any way infringe upon the content, approach or structure of plaintiffs' schools.

Plaintiff principals nonetheless argue on appeal, as they did before the district court, that the submission of the form violates their beliefs in the "Headship of Christ" and the separation of church and state. They urge that parental reporting would adequately serve the state's admittedly compelling interest in ensuring its children are receiving an adequate education, and submit that the state should be required to adopt this "least restrictive means." Plaintiff parents and children also assert that the reporting requirements violate their freedom of association, again proposing parental reporting as a "least restrictive means" of obtaining the information sought.

As the district court recognized, free exercise claims in the context of educational requirements have a long history. The Supreme Court's recognition of the state's compelling interest in the education of its children is equally longstanding. *See Pierce v. Society of Sisters,* 268 U.S. 510, 534, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925); *Board of Education v. Allen,* 392 U.S. 236, 245–47 & n. 7, 88 S.Ct. 1923, 1927–29 & n. 7, 20 L.Ed.2d 1060 (1968); *Wisconsin v. Yoder,* 406 U.S. 205, 213, 92 S.Ct. 1526, 1532, 32 L.Ed.2d 15 (1972). In *Brown v. Board of Education,* 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954), the Court found education to be "perhaps the

---

**2.** Iowa does not require private schools to be approved. Private schools may chose to become approved, as for example the Catholic schools in the Keokuk School District have, or they are free to operate as nonapproved private schools. Parents may satisfy the compulsory school laws by sending their children to nonapproved private schools so long as they provide "equivalent instruction by a certified teacher."

Iowa Code § 299.1. No issue regarding approval of plaintiffs' schools is presented in this case.

**3.** Plaintiffs objected to the admission of Superintendent Cameron's testimony to this effect on hearsay grounds, and the district court admitted the testimony subject to the objection. We believe this testimony was admissible under Fed. R.Evid. 801(d)(2).

most important function of state and local governments." The Court continued:

> Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society.... In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education. *Id.*

As the Iowa Supreme Court has recently noted, Iowa's interest in assuring that each child receive a quality education is no less compelling. *Johnson v. Charles City Community Schools Board of Education,* 368 N.W.2d 74, 77–79 (Iowa), *cert. denied sub nom.,* —— U.S. ——, 106 S.Ct. 594, 88 L.Ed.2d 574 (1985). The *Charles City* Court also recognized the "clear authority, even a duty" for some state intervention into private religious schools to ensure the state's interests are being met. *Id.* at 78. In fact, Iowa has enjoyed "a long tradition of friendly coexistence between private and public schools," dating from the first years of its statehood. *Id.* at 77.

■ The minimal reporting requirements to which plaintiff principals object unquestionably serve the state's interest in knowing whether its children are attending school and receiving an education. Plaintiffs agree that the state's interest is compelling, but urge that Iowa be required to accommodate their religious objections to the method it has chosen to effectuate its interest by allowing parents, rather than principals, to supply the requested information.

The Supreme Court has stated that a state's interest in education "is not totally free from a balancing process when it impinges on fundamental rights and interests," and "it must appear either that the State does not deny the free exercise of religious belief by its requirement, or that there is a state interest of sufficient magnitude to override the interest claiming protection under the Free Exercise Clause." *Wisconsin v. Yoder,* 406 U.S. 205, 214, 92 S.Ct. 1526, 1532, 32 L.Ed.2d 15 (1972). "The essence of all that has been said and written on the subject is that only those

interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion." *Id.* at 215, 92 S.Ct. at 1533.

While there may be some debate over the precise language to be used in defining the standard of review in free exercise cases, *see Goldman v. Weinberger,* 475 U.S. 503, 106 S.Ct. 1310, 1324–25, 89 L.Ed.2d 478 (1986) (O'Connor, J., dissenting); *Sheridan Road Baptist Church v. Department of Education,* 426 Mich. 462, 396 N.W.2d 373, 384–85 & n. 3 (1986) (Boyle, J., concurring), we have no difficulty upholding the reporting requirements in this case. As the district court determined, the burden on plaintiff principals' religious beliefs—if one exists at all—is very minimal and is clearly outweighed by the state's interest in receiving reliable information about where children are being educated and by whom. *See Attorney General v. Bailey,* 386 Mass. 367, 436 N.E.2d 139, 146, *cert. denied,* 459 U.S. 970, 103 S.Ct. 301, 74 L.Ed.2d 282 (1982) (upholding similar reporting requirements on the grounds that the incidental burden on plaintiffs' religion is outweighed by the state's need for the information to determine compliance with its compulsory school laws).

Moreover, the record amply supports the district court's finding that the alternative means proposed by plaintiffs would not adequately serve the state's purposes. The district court stated:

> Reports submitted by individual parents or an elected representative would not provide a means by which the information could be verified and there is no guarantee all present or future parents would agree to such proceedings. Thus, a substantial impediment to the State's objective would still result.

620 F.Supp. at 313. We agree with the district court that the reporting requirements contained in Iowa Code § 299.3 do not unconstitutionally infringe upon plaintiff principals' right to the free exercise of religion.

Plaintiffs also advance the argument that the reporting requirements violate their freedom of association. Plaintiffs ap-

parently do not object to the disclosure of the requested information, however, since they propose that parents be allowed to supply it. Thus, plaintiffs are not seeking to maintain privacy in their associations, an essential element of their freedom of association claim. *See NAACP v. Alabama,* 357 U.S. 449, 462, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488 (1958). In any event, we agree with the analysis of the Supreme Judicial Court of Massachusetts in *Attorney General v. Bailey, supra,* 436 N.E.2d at 147–48, and find that the state's interest in compulsory education which is served by the reporting requirements justifies any alleged burden on the plaintiffs' freedom of association.

Plaintiffs' constitutional challenge to the state's reporting requirements thus must fail, and the district court's decision upholding Iowa Code § 299.3 is affirmed.

## III. TEACHER CERTIFICATION

Plaintiffs also challenge the requirement in Iowa Code § 299.1 that parents of children ages 7 to 16 must send their children to public school or to a private school that utilizes certified teachers until the children complete the eighth grade. Plaintiffs allege the certification requirement violates the free exercise clause, the establishment clause, the due process clause and plaintiff teachers' freedom of expression. Plaintiffs allege these violations stem primarily from the certification requirement's interference with a teacher's calling by God to teach, the supervision of certified teachers by the Iowa Professional Teaching Practices Commission, and the "human relations" course required to obtain or maintain certification. The district court upheld the certification requirement, and plaintiffs have emphasized their free exercise objections to it on appeal, arguing that the administration of achievement tests represents the "least restrictive means" of achieving the state's interest in ensuring a quality education.

---

**4.** There is nothing in Iowa law which requires a teacher to obtain a certificate or which imposes any penalty on the teacher for teaching without a certificate. Parents, however, are required to

A brief outline of the provisions of Iowa law regarding certification may help to place plaintiffs' arguments in their proper context. Because section 299.1 is directed only to parents of compulsory school age children, compliance affects only teachers in grades one through eight.[4] To obtain a certificate to teach, an applicant must have received a bachelor's degree from a recognized institution or must graduate from a nonrecognized institution and have completed not less than three courses in professional education from a recognized institution. Iowa Admin.Code 670–13.1, 13.10 to 13.12. Temporary certificates are available for those who graduate from nonrecognized institutions. *Id.* 670–13.12. In addition, each initial applicant as well as those seeking to renew their certificate must take a human relations course designed to "contribute to the development of sensitivity to and understanding of the values, beliefs, life styles and attitudes of individuals and the diverse groups found in a pluralistic society." *Id.* 670–13.18. The general components of an approved program for an elementary school level teacher include courses in liberal arts, professional education (training in teaching methods), and student teaching. *Id.* 670–15.3, 19.14 to 19.15.

After hearing all the evidence in the case, the district court found that certification was the "best method now available to satisfy the state's prime interest in seeing that its children are taught by capable persons." 620 F.Supp. at 316. The court stated:

The importance [of the certificate] lies, not in the piece of paper itself, but in the education a person must receive to become eligible for the certificate. Courses in child psychology, how children learn, various methods of conveying information and developing the learning process and knowledge of the subject matter will prepare a person to be a better teacher.... This kind of knowledge is essential if one is to become a good teacher.

---

place their children in schools with certified teachers until the child reaches the age of 16 or completes the eighth grade. Iowa Code § 299.1.

*Id.* The record amply supports the district court's findings in this regard.

Plaintiffs argue strenuously on appeal that their religious beliefs cannot be reconciled with the state having any role in the certification or approval of teachers in their schools. They urge that standardized testing be substituted for certification, asserting that many other states do not require certification.

We recognize the sincerity of plaintiffs' beliefs and the burden which they believe the certification requirement imposes upon them. We agree with the Supreme Court of Iowa, however, that plaintiffs' position is "not altogether consistent" on this matter. *Johnson v. Charles City Community Schools Board of Education, supra,* 368 N.W.2d at 78. Plaintiffs believe that licensure wrongfully interferes with a teacher's calling by God to teach, yet they apparently do not object to the licensure of those in their church called by God to other occupations, such as doctor or lawyer, nor do they object to obtaining a driver's license for those serving in their bus ministry, even though Pastor Jaspers testified that none of the churches' ministries could properly be regulated by government.[5]

Moreover, while plaintiffs attempt to analogize their situation to that of the Amish in the *Yoder* case, the burden the certification requirement imposes upon the plaintiffs is not nearly as great as the burden placed upon the plaintiffs in *Yoder. See Sheridan Road Baptist Church v. Department of Education,* 426 Mich. 462, 396 N.W.2d 373, 381–82, 394–95 (1986); *State v. Rivinius,* 328 N.W.2d 220, 227 (N.D.1982), *cert. denied,* 460 U.S. 1070, 103 S.Ct. 1525, 75 L.Ed.2d 948 (1983); *State v. Shaver,* 294 N.W.2d 883, 893–94 (N.D.1980). The *Yoder* Court found that requiring the Amish to attend public school after the eighth grade would "ultimately result in the destruction of the Old Order Amish church community as it exists in the United States today." *Wisconsin v. Yoder, supra,* 406 U.S. at 212, 92 S.Ct. at 1531. The Court also found that the Amish believed that by sending their children to high school, they not only would expose themselves to the censure of the church community, but would also endanger their own salvation and that of their children. *Id.* at 209, 92 S.Ct. at 1530.

Unlike the Old Order Amish in *Yoder,* plaintiffs expect and encourage their children to attend college, and have no objection to college-educated teachers per se. The certification requirement applies only to teachers in grades one through eight, and plaintiff schools in fact each employ a teacher who is certified. Iowa's certification process does not prevent teachers in plaintiff schools from teaching from a Biblical perspective nor does it prevent plaintiff schools from hiring only those teachers who meet their religious criteria. Dr. Nearhoof, the State's Director of Teacher Certification, testified that many church-affiliated schools produce certified teachers, and teachers from nonrecognized institutions may become certified by taking a few additional courses.

Under these circumstances, the *Yoder* Court's admonition that courts "move with great circumspection in performing the sensitive and delicate task of weighing a State's legitimate social concern when faced with religious claims for exemption from generally applicable education requirements" is particularly instructive. *Id.* at 235, 92 S.Ct. at 1543. "[C]ourts are not school boards or legislatures, and are ill-equipped to determine the 'necessity' of discrete aspects of a State's program of compulsory education." *Id. See Johnson v. Charles City Community Schools Board of Education, supra,* 368 N.W.2d at 80; *State v. Shaver, supra,* 294 N.W.2d at 899–900.[6]

---

5. Pastor Jaspers stated, for example, that should the church decide to open a nursing home, it too must be free from licensing or other state requirements: "The only answer I have is that I can't see any point where it will be right for the church to be regulated by the government, period."

6. For this reason, we find that plaintiffs' evidence of the experience of other states, while perhaps relevant, is not determinative of the constitutional questions before us. *See Braunfeld v. Brown,* 366 U.S. 599, 608, 81 S.Ct. 1144, 1148, 6 L.Ed.2d 563 (1961).

In evaluating plaintiffs' claims, we must determine whether, in light of the importance of the state's interest in the education of its children and the nature of the burden the certification requirement places on the plaintiffs' religious beliefs, plaintiffs' proposed testing alternative would adequately serve the state's interest. After carefully considering all of the evidence presented, the district court found it would not.

Plaintiffs object because the certificate requirement relies upon the process (education of the teacher) rather than the product (Is the child learning?). Historically, the emphasis has been on the process. Iowa has required some sort of certificate since 1863. It has been assumed that if the process is followed the children will learn. Recently there has been more interest in attempting to determine if the children are learning.... While testing is a valuable tool, it is not sufficient in and of itself to determine whether a student is receiving an adequate education. Tests primarily determine knowledge of content of the subject matter. They do not test other aspects of education necessary to prepare a student for life in today's society.

620 F.Supp. at 316.

The court also approved of the Iowa Supreme Court's observations that

mere testing would be wholly inadequate to protect the state's rightful interests. A test looks only backward. It can, to a limited extent, measure whether a child has been receiving an education. The state is entitled to the assurance that the child is receiving an education.

368 N.W.2d at 81. *See Sheridan Road Baptist Church v. Department of Education, supra,* 396 N.W.2d at 382–83, 394; *State v. Rivinius, supra,* 328 N.W.2d at 229; *Nebraska ex rel. Douglas v. Faith Baptist Church,* 207 Neb. 802, 301 N.W.2d 571, 579, *appeal dismissed,* 454 U.S. 803, 102 S.Ct. 75, 70 L.Ed.2d 72 (1981).

These findings concerning the limited effectiveness of testing are well-supported by the testimony of, *inter alia,* Dr. Nearhoof, Dr. Benton, Dr. Bradley, Dr. Cameron, Dr. Feldt, and Sister Josephine Oldani. These individuals expressed their concerns about the reliability and validity of testing as the sole measure of a quality education, concerns which are shared by others in the educational profession. *See, e.g.,* Comment, *Regulation of Fundamentalist Christian Schools: Free Exercise of Religion v. The State's Interest in Quality Education,* 67 Kentucky L.J. 415, 427–29 (1978–1979).

■ We agree on the basis of the record in this case that the state has met its burden of demonstrating that testing would not adequately serve its interests. Not only do certified teachers receive training in child development and methods of instruction, but they are also mandatory child abuse reporters and take courses on identifying those children with special needs. All of these qualities, as plaintiffs' own expert witnesses conceded, are desirable characteristics for a good teacher. Admittedly, there is a lack of empirical evidence concerning the relationship between certified teachers and a quality education, due to the difficulty of research on this issue, but there is a similar lack of empirical verification concerning plaintiffs' proposed alternative, and we do not believe such evidence is required in this case. For all of these reasons, we agree with the district court that the state's choice of certification as the best means available today to satisfy its interest in the education of its children does not violate plaintiffs' right to the free exercise of their religion.

Plaintiffs also challenge the certification requirement under the establishment clause, but we hold that section 299.1 of the Iowa Code does not violate this clause. Plaintiffs concede the statute has a secular purpose, and we find, contrary to plaintiffs' allegations, that its effect neither advances nor inhibits religion, nor does it foster an excessive entanglement with religion. *See Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). Plaintiffs' arguments to the contrary are based primarily on their view of the "human relations" course required for certification and the possibility of review of

teachers' actions upon a complaint being filed with the Professional Teaching Practices Commission.

As the district court found, however, nothing in the certification statute or regulations requires agreement or acceptance of the beliefs or values of others. Plaintiffs' objection to the "human relations" course thus appears to be based solely upon the exposure of college-level students to viewpoints other than their own. But, as the district court also found, the president of one of the Bible colleges approved by plaintiffs indicated that his students were made aware of and discussed diverse viewpoints, because in the president's opinion the best way to test one's faith was to compare it with the beliefs and values of others. Nothing prevents a prospective teacher taking Iowa's human relations course from evaluating others' viewpoints from their own religious perspective. *See* 620 F.Supp. at 315. We thus conclude the effect of the "human relations" course neither advances nor inhibits religion.

Plaintiffs also claim "excessive entanglement" results from the continuing jurisdiction of the Professional Teaching Practices Commission, but plaintiffs distort the Commission's function and practice. The Commission's jurisdiction is limited, *see* Iowa Code §§ 272A.1 et seq.; Iowa Admin. Code 640–2.3, and testimony by officials revealed that the Commission does not in any way interfere with private school teachers' religious beliefs or teachings. The Commission acts only upon complaints, such as allegations of breach of contract brought by school officials, allegations of improper conduct by teachers towards students (disciplinary or improper sexual advances, for example) brought by parents, and allegations of unprofessional conduct by administrators towards teachers brought by a teacher or the teacher's representative. Neither the plaintiffs' schools nor representatives from other private schools who testified at trial had ever had any contact whatsoever with the Commission. In fact, the evidence revealed the Commission had been presented with only one case in its entire history involving a private school teacher. This case was initiated by a complaint from the principal of a private school which alleged that the teacher had breached a contract, and it was dismissed by the Commission for lack of jurisdiction. Under these circumstances, we must conclude that the teacher certification requirement does not result in "excessive entanglement" or otherwise violate the establishment clause.

Plaintiffs' other alleged violations are equally unavailing. Iowa Code § 299.1 is addressed to parents of compulsory school aged children; it does not prohibit teachers from expressing their religious views to anyone at any time nor does it deny them due process.

Nothing we have said herein is intended to diminish plaintiffs' religious views or to suggest that the State of Iowa could not legislatively choose to accommodate their beliefs. We hold simply that based on the record before us, the district court properly held that the constitution does not compel the accommodation regarding the state's certification requirement which the plaintiffs have requested.

## IV. EQUIVALENT INSTRUCTION

Section 299.1 also provides that the instruction children receive from a certified teacher must be "equivalent" to that offered by the public schools. At the time of trial, the term "equivalent instruction" was not specifically defined anywhere in the Iowa Code or regulations, although the state was in the process of promulgating such regulations. Plaintiffs challenged the "equivalent instruction" requirement on vagueness grounds, and the state argued to the district court, as it does here, that other statutes sufficiently define the term. The district court rejected the state's contention, based upon statements by the Iowa Supreme Court indicating that Court's rejection of them as well. 602 F.Supp. at 317–18; *Johnson v. Charles City Community Schools Board of Education, supra,* 368 N.W.2d at 79–80. We agree with the district court's conclusion that the other statutes cited by the state do not cure the

vagueness problem inherent in the otherwise undefined term "equivalent instruction."

■ In large measure as a result of the *Charles City* litigation, however, the state has recently promulgated regulations entitled "Equivalent Instruction Standards," which became effective February 6, 1986. Iowa Admin.Code 670–63.1 to 63.4. These standards specify the minimum curriculum to be offered in grades one through eight, including for example courses in English, mathematics and science. *Id.* The state argues that these regulations have effectively rendered its appeal from the district court's decision moot, but we believe the proper course is to remand this portion of the case to the district court for further consideration in light of the newly adopted standards.

## V. THE AMISH EXEMPTION

Plaintiffs' final constitutional challenge involves the state's denial of plaintiff parents' request to be exempted from the above requirements through the "Amish exemption," Iowa Code § 299.24.[7] As the district court noted, this exemption has been granted only to parents of children attending Amish schools and one conservative Mennonite school, all of which are located in distinct geographical areas of the state and which follow the style of life and religious tenets described by the Supreme Court in *Yoder*. *See* 620 F.Supp. at 319; *Wisconsin v. Yoder, supra*, 406 U.S. at 209–12, 216–18, 92 S.Ct. at 1530–32, 1533–

35. In *Johnson v. Charles City Community Schools Board of Education*, the Iowa Supreme Court specifically ruled that plaintiff parents[8] were not entitled to the exemption because they failed to prove that their church "professes principles or tenets that differ substantially from the 'objectives, goals, and philosophy of education' embodied in the areas of study listed in subsections (3) and (4) of section 257.25," which must be taught in grades one through eight. 368 N.W.2d at 83.[9] The Court found that no tenet of plaintiffs' church was in conflict with teaching subjects such as English-language arts, social studies, mathematics and science; plaintiffs sought only to teach those subjects in their own way, and nothing in section 257.-25 prevented plaintiffs from doing so. Holding that plaintiffs had not established any substantial dissimilarity between their educational goals and those embodied in section 257.25, "certainly none which sets them apart from all the many other parochial schools in the state," the *Charles City* Court approved the administrative denial of plaintiffs' request for an exemption. *Id.*

Plaintiffs argue before this Court, as they did before the district court and before the Iowa Supreme Court, that this denial violates the equal protection clause. They further contend that granting the exemption to the Amish but not to them violates the establishment clause because the effect is to advance the Amish religion and to inhibit the plaintiffs'.

---

7. Iowa Code § 299.24 provides in relevant part: When members or representatives of a local congregation of a recognized church or religious denomination established for ten years or more within the state of Iowa prior to July 1, 1967, which professes principles or tenets that differ substantially from the objectives, goals, and philosophy of education embodied in standards set forth in section 257.25, and rules adopted in implementation thereof, file with the state superintendent of public instruction proof of the existence of such conflicting tenets or principles, together with a list of the names, ages, and post-office addresses of all persons of compulsory school age desiring to be exempted from the compulsory education law and the educational standards law, whose parents or guardians are members of the congregation or religious denomination, the state superintendent, subject to the approval of the state board of public instruction, may exempt the members of the congregation or religious denomination from compliance with any or all requirements of the compulsory education law and the educational standards law. . . .

8. The applications for exemption filed by plaintiff churches on behalf of the parents of children in their schools sought exemption for both members and nonmembers of the churches, even though the exemption itself is limited to church members. *See* Iowa Code § 299.24.

9. These same courses appear in the "Equivalent Instruction Standards" now promulgated as Iowa Admin.Code 670–63.1 to 63.4.

Because religion is a fundamental right, any classification of religious groups is subject to strict scrutiny. *Johnson v. Robison*, 415 U.S. 361, 375 n. 14, 94 S.Ct. 1160, 1169 n. 14, 39 L.Ed.2d 389 (1974); 2 R. Rotunda, J. Nowak & J. Young, *Treatise on Constitutional Law* § 1840 at 696–97 (1986). That is, the state must show the classification has been precisely tailored to serve a compelling state interest. *Plyler v. Doe*, 457 U.S. 202, 216–27, 102 S.Ct. 2382, 2394–2400, 72 L.Ed.2d 786 (1982). Of course, this standard is substantially equivalent to the free exercise standards we have already applied to Iowa's reporting and teacher certification requirements. *See Attorney General v. Soto-Lopez*, —— U.S. ——, 106 S.Ct. 2317, 2322 n. 4, 90 L.Ed.2d 899 (1986); 2 *Treatise on Constitutional Law, supra*, § 1840 at 697.

The equal protection clause directs that "all persons similarly circumstanced shall be treated alike." *Plyler v. Doe, supra*, 457 U.S. at 216, 102 S.Ct. at 2394 (citation omitted). "But so too, '[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.'" *Id.* In creating an exemption to its compulsory school laws based upon religious beliefs, Iowa treads the fine line between the free exercise clause and the establishment clause noted by the Supreme Court in *Yoder*:

> The Court must not ignore the danger that an exception from a general obligation of citizenship on religious grounds may run afoul of the Establishment Clause, but that danger cannot be allowed to prevent any exception....

406 U.S. at 220–21, 92 S.Ct. at 1535–36. The Court found an exception for the Amish warranted based upon what can only be described as their very unique circumstances and their centuries-old insulated, isolated lifestyle. As the Court itself noted, the Amish had made a convincing showing, "one that probably few other religious groups or sects could make," concerning the nature of their religious beliefs, the severe burden placed upon those beliefs by the state's requirements and the adequacy of the continuing informal vocational edu-

cation which they preferred to serve the state's interest in the education of their children. *Id.* at 235–36, 92 S.Ct. at 1543–44.

Both the district court and the Iowa Supreme Court recognized that resolving plaintiffs' equal protection challenge required the court to determine whether plaintiffs and the Amish were so similarly situated that the denial of the exemption to the plaintiffs violated the constitution. Both courts analyzed the factors upon which the Supreme Court relied in *Yoder* to create an exemption to Wisconsin's compulsory attendance laws for the Amish who opposed sending their children to high school, and compared plaintiffs' position to that of the Amish. Both courts concluded that plaintiffs were properly denied the exemption. The Iowa Supreme Court stated:

> When the same factors [applied by the Supreme Court in *Yoder* ] are placed in balance on this record the opposite conclusion asserts itself. Sincerity of belief is the only factor wholly common to both the Amish and these plaintiffs. The beliefs of the plaintiffs are greatly less interwoven with their daily mode of life. The Amish culture is greatly more isolated from mainstream American life. Plaintiffs' children, for all the distinctive religious convictions they will be given, will live, compete for jobs, work, and move about in a diverse and complex society. Their educational needs are plainly not as circumscribed as those of Amish children. Neither does exposure to the more general American culture pose such an immediate threat to plaintiffs' mode of living as is the case with the Amish.

*Johnson v. Charles City Community Schools Board of Education, supra*, 368 N.W.2d at 84.

After adopting the state court's reasoning and holding, the district court added the following observations:

> The Court is also conscious of the impact that granting these plaintiffs an exception to the compulsory education requirements could have on public edu-

cation and the courts. Under *Yoder* and *Johnson* a clear line of demarcation is established that offers guidance to parents, school officials and the courts. A blurring of that line by granting an exception here would create an impossible burden upon all persons and agencies involved to decide whether minor variations of fact one way or the other entitled each individual church school to an exception. The Court is convinced that the Supreme Court intended the exception to be a narrow one.

620 F.Supp. at 319. We agree with these observations. The Supreme Court has recently recognized the validity of a clear line where religious practices are concerned. *Goldman v. Weinberger,* 475 U.S. 503, 106 S.Ct. 1310, 1314, 89 L.Ed.2d 478 (1986) (upholding military regulation which draws a line between visible and nonvisible religious apparel, allowing only the latter to be worn by service personnel); *id.* 106 S.Ct. at 1315–16 (Stevens, J., concurring).

■ We have previously addressed the factual dissimilarities between the plaintiffs and the Amish, and they will not be repeated here. The record in this case contains additional specific evidence of the beliefs and lifestyles of those who have been granted the exemption in Iowa, and we find more dissimilarities than similarities between these individuals and the plaintiffs. Accordingly, we agree with the district court that the denial of the section 299.24 exemption to the plaintiffs does not violate their right to equal protection of the laws.

We also find no establishment clause violation on ˙the facts of this case. As the *Yoder* Court stated, narrow exemptions such as Iowa has adopted successfully traverse the "tight rope" created by the tension between the free exercise clause and the establishment clause. *Wisconsin v. Yoder, supra,* 406 U.S. at 221, 92 S.Ct. at 1536. This narrowly drawn accommodation to one religious view does not require the state, under the establishment clause, to accommodate all others. *See generally United States v. Lee,* 455 U.S. 252, 261, 102 S.Ct. 1051, 1057, 71 L.Ed.2d 127 (1982);

*Gillette v. United States,* 401 U.S. 437, 451–52, 91 S.Ct. 828, 837–38, 28 L.Ed.2d 168 (1971). The *Yoder* Court cited ˙ the need for "preserving doctrinal flexibility and recognizing the need for a sensible and realistic application of the Religion Clauses," *Wisconsin v. Yoder, supra,* 406 U.S. at 221, 92 S.Ct. at 1536, and we believe that such an approach in this case supports to the conclusion that the "Amish exemption" as interpreted by the Iowa Supreme Court is constitutional.

## V. KEOKUK'S ATTORNEY'S FEES

The only remaining issue on appeal arises from defendant Keokuk Community School District Board of Education's request for attorney's fees under 42 U.S.C. § 1988. As the foregoing discussion reveals, plaintiffs utilized this case to challenge broad aspects of Iowa's compulsory school laws—a challenge very similar to that which the Iowa Supreme Court had rejected only three months before trial. Not only was the State of Iowa represented as a defendant in this litigation, however, but the Keokuk Community School District Board of Education was as well.

To be sure, the Keokuk District, like all local school districts, plays a role in implementing the state laws plaintiffs have challenged. The secretary sends out the reporting form which principals of private schools must fill out under Iowa Code § 299.3, and the Board is responsible for reporting parents who violate Iowa Code § 299.1 to the county attorney for possible truancy prosecution. The Keokuk Board also has the same interest as all other local school boards in the education of the children residing within its school district.

Only one of the plaintiff schools, the Calvary Baptist Christian Academy, is located in the Keokuk School District. The other school, the Central Iowa Christian Academy, is located in the Marshalltown School District. There is no evidence that the Keokuk Board had ever recommended for prosecution any parent whose child attended the Calvary Baptist Christian Academy. Unlike the Marshalltown School Board, however, the Keokuk Board had

failed to agree that it would refrain from doing so.

Apparently based upon this failure, the district court denied Keokuk's motion to dismiss, and, at the end of the trial denied Keokuk's motion for attorney's fees, stating simply that "[a]lthough the Keokuk Community School District was the prevailing party on the issues in which it was involved, the Court cannot hold that plaintiffs' position was so frivolous, unreasonable or groundless that the Keokuk Community School District is entitled to an award of attorney's fees." We believe the district court erred in this regard.

Section 1988 provides attorney's fees to a prevailing defendant upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation. *Buford v. Tremayne,* 747 F.2d 445, 448 (8th Cir.1984); *American Family Life Assurance Co. v. Teasdale,* 733 F.2d 559, 569 (8th Cir.1984). *See Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 252 (2d Cir. 1985). In seeking to determine whether a suit is frivolous, unreasonable or groundless, courts have focused on several factors, including whether the issue is one of first impression requiring judicial resolution and whether the controversy is sufficiently based upon a real threat of injury to the plaintiff. *Reichenberger v. Pritchard,* 660 F.2d 280, 288 (7th Cir.1981). A suit which is meritoriously brought against some defendants may be frivolous or groundless as to others, and fees justified on this basis. *Gerena-Valentin v. Koch,* 739 F.2d 755, 761–62 (2d Cir.1984); *Glass v. Pfeffer,* 657 F.2d 252, 256–57 (10th Cir. 1981); *Waller v. Butkovich,* 584 F.Supp. 909, 947 (M.D.N.C.1984).

In this case, plaintiffs and their counsel—who were also counsel for plaintiffs in the *Charles City* litigation—were aware that the arguments they presented to the district court did not present any issues of first impression, but in fact had been rejected by numerous courts.[10] Moreover, we fail to see the necessity of joining a local school district as a party when the gravamen of plaintiffs' complaint, the relief they requested, and all of the arguments they presented to the district court and to this Court on appeal are directed solely to actions of the State of Iowa. Plaintiffs' motivation in suing the Keokuk School Board can only be suggested by their failure to sue the Marshalltown School Board, or for that matter, either county attorney who would actually have been responsible for any charges brought against plaintiff parents under section 299.-1. The expenses of trial were incurred only by the Keokuk School Board, which governs a small district of less than 20,000 people, apparently because plaintiffs sought to use their suit to coerce the Keokuk Board into agreeing to an "informal" accommodation of their religious views, such as they sought formally to obtain at trial. Plaintiffs nowhere rebut Keokuk's argument to this Court that Keokuk's failure to agree not to report parents of children attending plaintiffs' school to the county attorney was the only reason it was named as a defendant.

Litigation which presents only claims which have been previously rejected and which is brought against a party in no position to change the law short of an "informal accommodation" is, in our view, vexatious and unreasonable. *Eastway Construction Corp. v. City of New York, supra,* 762 F.2d at 252; *Gerena-Valentin v. Koch, supra,* 739 F.2d at 761–62. We find no relevant difference between the Keokuk School Board and the Marshalltown School Board, which the district court correctly determined was not an indispensable party, since the state adequately represented whatever interest either school

---

10. Plaintiffs did prevail on one issue—the district court agreed that the term "equivalent instruction" was unconstitutionally vague "without further definition." 620 F.Supp. at 318. Plaintiffs were aware, however, that the state was in the process of promulgating regulations to cure the vagueness problem noted first by the Iowa Supreme Court in the *Charles City* decision, *see* 368 N.W.2d at 79–80, and had reason to anticipate that these regulations would supply the "further definition" required by the district court. We, of course, have remanded this issue for the district court to decide in the first instance. This problem is not one which the Keokuk School Board is responsible for in any event.

district might have in the outcome of the litigation. Under all of these circumstances, we hold the district court erred in refusing to grant Keokuk's request for attorney's fees under section 1988, and we remand this issue to the court for a proper determination of the amount of such an award.

## CONCLUSION

Based on the foregoing, we affirm the district court's decision upholding the reporting and teacher certification requirements of Iowa law, as well as the court's determination that the state's denial of the "Amish exemption" to plaintiffs is constitutional. We reverse the decision of the district court refusing to award defendant Keokuk Community School District Board of Education a reasonable attorney's fee under section 1988, and remand this issue, along with those relating to the definition of the term "equivalent instruction," to the district court for further consideration. We retain jurisdiction of this matter with respect to those issues remanded to the district court.